TRINITY UNIVERSAL INSURANCE COMPANY and Trinity Lloyd's Insurance Company, Petitioners,

v.

Nicole COWAN, individually and as assignee of Gregory D. Gage, Respondent.

No. 95–1160.

Supreme Court of Texas.

May 16, 1997.

Ben Taylor, Dallas, Jack McKinley, Houston, for Petitioners.

Ray Chester, David Denis Griner, Austin, for Respondent.

CORNYN, Justice, delivered the opinion for a unanimous Court.

We decide in this case the meaning of two terms commonly used in insurance policies. First, we decide whether mental anguish alone is a "bodily injury" under a standard homeowners' insurance policy defining "bodily injury" as "bodily harm, sickness or disease." We conclude that, absent an allegation of physical manifestation of mental anguish, a claim of mental anguish is not a "bodily injury" as defined in the policy for purposes of invoking the duty to defend. Second, we decide whether an insured's intentional tort that results in unintended injuries is an "accident," and thus an "occurrence" under the same policy. We conclude that it is not, and thus there is no coverage under the policy.

Gregory Gage was working at an H.E.B. Photo Place as a photo lab clerk when a roll of film containing somewhat revealing pictures of Nicole Cowan was delivered for developing. Gage made extra prints of four of the pictures and took them home. He later showed them to some friends and left the pictures with one friend with instructions to throw them away. That friend, however, showed the pictures to someone else, who

was a friend of Cowan and who told her of Gage's actions. Cowan then sued Gage and H.E.B., alleging, among other things, negligence and gross negligence. Cowan alleged that she had suffered "severe mental pain, a loss of privacy, humiliation, embarrassment, fear, frustration, mental anguish, and [would] continue to do so in the future." Gage, who was about twenty years old and living with his parents at the time, notified his parents' homeowners' insurance carrier, Trinity Lloyd's Insurance Company, a subsidiary of Trinity Universal Insurance Company (collectively "Trinity"), of the suit.

Trinity initially defended Gage under a reservation of rights, but later denied coverage and withdrew its defense. Cowan settled with H.E.B., and then Gage agreed to assign to Cowan any claims he might have against Trinity in exchange for her promise not to execute against any of his assets except any coverage afforded by the Trinity policy. During the ensuing nonjury trial against Gage, at which he did not appear or otherwise defend, Cowan and her mother testified that Nicole suffered mental anguish, along with headaches, stomachaches, and sleeplessness as a result of Gage's actions. The trial court found Gage negligent and grossly negligent, and awarded Cowan $250,000.

Cowan then filed this lawsuit against Trinity, bringing a claim as Gage's judgment creditor, and also bad faith claims as Gage's assignee. Both parties moved for summary judgment, Cowan on the question of insurance coverage and Trinity on both coverage and bad faith. The trial court granted Cowan's motion and denied Trinity's, leaving the issue of damages, the bad faith claims, and attorney's fees for trial.

Cowan and Trinity settled most of their dispute on the eve of trial. Trinity agreed to pay the $250,000 underlying judgment, postjudgment interest, and $100,000 in attorney's fees, and Cowan agreed to waive any claim for extracontractual damages above that amount. Trinity expressly reserved the right to appeal the trial court's partial summary judgment on coverage and whether Trinity was bound by the amount of the underlying judgment. The trial court signed a final judgment incorporating the parties' agreement. Trinity appealed, and the court of appeals affirmed. 906 S.W.2d 124.

Because our decision on the coverage issue is dispositive of this entire controversy, we do not reach Trinity's challenge to the amount of damages, see TEX.R.APP. P. 81(c), except to note that it is controlled by our recent decision in *State Farm Fire & Casualty Co. v. Gandy*, 925 S.W.2d 696 (Tex.1996). There, we held, "In no event . . . is a judgment for plaintiff against defendant, rendered without a fully adversarial trial, binding on defendant's insurer or admissible as evidence of damages in an action against defendant's insurer by plaintiff as defendant's assignee." *Id.* at 714.

On the coverage issue, Trinity complains of the court of appeals' holding that Cowan's alleged "severe mental pain, . . . loss of privacy, humiliation, embarrassment, fear, frustration, [and] mental anguish" were "bodily injur[ies]" resulting from a covered "occurrence" under the policy. 906 S.W.2d at 130–31. Cowan's principal arguments are that her claims were covered under the Trinity policy because either (1) her claim for mental anguish implicitly raised a claim for associated physical manifestations, or (2) a claim for pure mental anguish, even absent *any* physical manifestations, is a "bodily injury" as defined by the policy. Cowan also argues that Trinity waived its right to deny coverage because it did not investigate Cowan's claims. The court of appeals affirmed the trial court's judgment based solely on Cowan's first argument. 906 S.W.2d at 130–31, 133 n. 4.

■ Preliminarily, we note that under the "complaint allegation rule," factual allegations in the pleadings and the policy language determine an insurer's duty to defend. *American Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 847–48 (Tex.1994). "If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured." *Id.* at 848. The duty to indemnify is triggered by the actual facts establishing liability in the underlying suit. *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 25 (Tex.1965). Thus, the duty to defend

and the duty to indemnify by an insurer are distinct and separate duties. *See American Alliance Ins. Co. v. Frito–Lay, Inc.,* 788 S.W.2d 152, 153 (Tex.App.—Dallas 1990, writ dism'd).

## I. Bodily Injury

### A. Pure Mental Anguish Is Not Bodily Injury

Trinity's standard homeowners' policy provides, in relevant part:

Coverage C (Personal Liability)

If a claim is made or suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies,

[Trinity] will:

1. pay up to our limit for the damages for which the insured is legally liable.

2. provide a defense at [Trinity's] expense by counsel of [Trinity's] choice even if the suit is groundless, false or fraudulent. [Trinity] may investigate and settle any claim or suit that [Trinity] decide[s] is appropriate.

"Bodily injury" is defined as "bodily harm, sickness or disease. This includes required care, loss of services and death that results."

Cowan contends that two Texas cases, *City of Austin v. Davis,* 693 S.W.2d 31 (Tex. App.—Austin 1985, writ ref'd n.r.e.), and *McGovern v. Williams,* 741 S.W.2d 373 (Tex. 1987), support her argument that pure mental anguish alone is "bodily injury" as defined under Trinity's homeowners' policy. *Davis,* however, concerned whether a father could recover as a bystander when he and others discovered the body of his son several hours after a fatal fall, not whether mental anguish constitutes "bodily injury" under the terms of an insurance policy. 693 S.W.2d at 33. *Compare Davis with Edinburg Hosp. Auth. v. Trevino,* 941 S.W.2d 76 (Tex.1997) (declining to recognize bystander recovery in medical malpractice cases). Moreover, in *Davis,*

the parties stipulated to the plaintiff's physical manifestations of emotional distress. 693 S.W.2d at 33.

*McGovern* is also distinguishable and thus not controlling here. In *McGovern,* we held that the loss of consortium claim of a wife who had not herself been involved in an automobile accident was derivative of her husband's injuries and was thus not a separate bodily injury for purposes of increasing the applicable policy limits of the couple's automobile insurance policy. 741 S.W.2d at 374. One might, we concede, infer from language in that opinion that mental anguish is a bodily injury:

Loss of consortium, therefore, does not involve any allegation of physical harm, nor does it include an element of mental anguish. Mental anguish is a cause of action separate and distinct from loss of consortium. *Moore v. Lillebo,* 722 S.W.2d 683, 687–88 (Tex.1986).[1] In the present case, Mrs. McGovern neither alleged physical harm nor mental anguish. Her claim for loss of consortium, therefore, cannot constitute a claim of "bodily injury."

*Id.* at 374–75.

But on closer scrutiny, *McGovern* does not support Cowan's contention. First, we were answering a different question in *McGovern* from that presented here, not one of coverage under the definition of terms in the policy, but one of the applicable policy limits given a loss of consortium claim in a case in which coverage was uncontested. Second, later cases relying on *McGovern* have largely rejected separate mental anguish claims of similarly situated plaintiffs based on the holding that such claims are also derivative of the bodily injury to the person involved in the accident. *See Eshtary v. Allstate Ins. Co.,* 767 S.W.2d 291, 293 (Tex.App.—Fort Worth 1989, writ denied) (applying *McGovern*'s "ultimate rationale" that "the term 'bodily injury' cannot be reasonably construed to incorporate mental pain and anguish if the claim is being asserted as a

---

1. We have since held that mental anguish is only an *element* of recoverable damages when some otherwise cognizable legal duty is breached. *See Boyles v. Kerr,* 855 S.W.2d 593, 597–598 (Tex. 1993). Indeed, this is consistent with *Moore v.*

*Lillebo,* in which we noted that "mental anguish and loss of society are separate *elements* of recovery" in wrongful death actions. 722 S.W.2d at 688 (emphasis added).

derivative claim arising only as a consequence of injuries to another person"); *Manriquez v. Mid–Century Ins. Co.*, 779 S.W.2d 482, 485 (Tex.App.—El Paso 1989, writ denied) (stating that *McGovern* ultimately turned on fact that the "per person" limit referred only to persons involved in the auto accident and not to persons who suffer a loss as a result of an injury to someone else); *Miller v. Windsor Ins. Co.*, 923 S.W.2d 91, 97 (Tex.App.—Fort Worth 1996, writ denied) ("It is well established that mental anguish and loss of consortium damages suffered by one not involved in an actual accident are not bodily injuries ...."); *see also Rosenzweig v. Dallas Area Rapid Transit*, 841 S.W.2d 897, 898 (Tex.App.—Dallas 1992, writ denied) (loss of companionship and consortium, mental anguish, and loss of household services were derivative claims, and thus not separate "bodily injury" under the Texas Tort Claims Act.)

Still, at least one of these cases does appear to presume that the person actually involved in an auto accident could recover for purely emotional injuries. *See Manriquez*, 779 S.W.2d at 485 (stating that *McGovern* interpreted "per person" limits to refer to person "who is actually involved and physically *or emotionally* injured in the accident") (emphasis added). We now disapprove of this misapplication of *McGovern* to the extent that it might suggest that coverage exists for "bodily injuries" that are purely emotional in nature.

 That Texas tort law allows for recovery of mental anguish damages unaccompanied by physical manifestations in some circumstances, *see Boyles v. Kerr*, 855 S.W.2d 593, 597–598 (Tex.1993), does not mean that insurance coverage for bodily injury necessarily encompasses purely emotional injuries. Interpretation of insurance contracts in Texas is governed by the same rules as interpretation of other contracts. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex.1994); *Upshaw v. Trinity Cos.*, 842 S.W.2d 631, 633 (Tex.1992). And when terms are defined in an insurance policy, those definitions control. *See, e.g., Ramsay v. Maryland Am. Gen. Ins. Co.*, 533 S.W.2d 344, 346 (Tex.1976); *see also SL Indus., Inc.*

*v. American Motorists Ins. Co.*, 128 N.J. 188, 607 A.2d 1266, 1274–75 (1992) (rejecting argument that coverage should exist because tort law allows recovery for emotional distress without bodily injury); *Gonzales v. Allstate Ins. Co.*, 122 N.M. 137, 921 P.2d 944, 947 (1996); *Aetna Cas. & Sur. Co. v. First Sec. Bank*, 662 F.Supp. 1126, 1128 (D.Mont. 1987) (drawing distinction under Montana law between physical injury and mental distress); *West Am. Ins. Co. v. Bank of Isle of Wight*, 673 F.Supp. 760, 764 (E.D.Va.1987) (pointing out that "The great weight of ... authority points in one direction; ... that 'bodily injury' does not encompass emotional distress, but is limited to physical injury. Indeed, the ... policy definition itself also points powerfully in this direction."). "Tort law and insurance law are not coextensive." *SL Indus.*, 607 A.2d at 1275.

Nor do we find cases construing the term "bodily injury," "injury," or "personal injury" as those terms are used in the Texas Tort Claims Act and Texas Workers' Compensation Act helpful. Just as the insurance policy in this case is controlled by the definitions contained within it, *see Ramsay*, 533 S.W.2d at 346, those statutes are to be construed according to the definitions supplied by the statutes themselves.

We hold that "bodily injury," as defined in the Trinity policy, does not include purely emotional injuries, such as those alleged by Cowan, and unambiguously requires an injury to the physical structure of the human body. Our decision comports with the commonly understood meaning of "bodily," which implies a physical, and not purely mental, emotional, or spiritual harm. *See Aim Ins. Co. v. Culcasi*, 229 Cal.App.3d 209, 280 Cal. Rptr. 766, 772 (1991, review denied); *Cotton States Mut. Ins. Co. v. Crosby*, 244 Ga. 456, 260 S.E.2d 860, 862 (1979) (use of the term "bodily" in the definition of "bodily injury" is "a genuine attempt to explain words which need no explanation"); *Presidential Hotel v. Canal Ins. Co.*, 188 Ga.App. 609, 373 S.E.2d 671, 672, (1988) (" '[B]odily injury' means just that.... It pertains to physical injury to the body. It does not include non-physical, emotional or mental harm."); *State Farm Mut. Auto. Ins. Co. v. Descheemaeker*, 178

Mich.App. 729, 444 N.W.2d 153, 154 (1989) (per curiam) ("bodily injury" unambiguously contemplates actual physical harm or damage to body); *E–Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 106 Wash.2d 901, 726 P.2d 439, 443 (1986) ("Sickness" and "disease" are modified by "bodily"); *Knapp v. Eagle Property Management Corp.*, 54 F.3d 1272, 1284 (7th Cir.1995) (natural reading of "bodily injury, sickness, or disease" indicates that "bodily" modifies all three terms thereby covering only injuries with some physical component). WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 245 (1966) also defines "bodily" as "having a body or a material form: physical, corporeal." Likewise, BLACK'S LAW DICTIONARY 175 (6th ed.1990) defines "bodily" as "[p]ertaining to or concerning the body; of or belonging to the body or the physical constitution; not mental, but corporeal."

Many other courts have previously considered the scope of policy language identical or very similar to that used in the Trinity policy. Under such circumstances, when identical insurance provisions will necessarily be interpreted in various jurisdictions, we think it prudent to strive for uniformity as much as possible. *National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 522 (Tex. 1995).

A substantial majority of those courts considering the question that now confronts us have held that purely mental injuries, such as those pleaded by Nicole Cowan, do not constitute "bodily injury." [2] A minority of

---

**2.** *See, e.g., Kema Steel, Inc. v. Home Ins. Co.*, 153 Ariz. 315, 736 P.2d 798, 799 (App.1986); *Aim Ins. Co. v. Culcasi*, 229 Cal.App.3d 209, 280 Cal.Rptr. 766, 773–75 (1991, review denied); *Employers Cas. Ins. v. Foust*, 29 Cal.App.3d 382, 105 Cal.Rptr. 505, 508 (1972); *National Cas. Co. v. Great Southwest Fire Ins. Co.*, 833 P.2d 741, 747 (Colo.1992); *McGuire v. American States Ins. Co.*, 491 So.2d 606, 608 (Fla.Dist.Ct.App.1986); *Cotton States Mut. Ins. Co. v. Crosby*, 244 Ga. 456, 260 S.E.2d 860, 862 (1979); *Presidential Hotel v. Canal Ins. Co.*, 188 Ga.App. 609, 373 S.E.2d 671, 672 (1988); *Albin v. State Farm Mut. Auto. Ins. Co.*, 498 So.2d 171, 174 (La.Ct.App.), *writ denied*, 498 So.2d 1088 (La.1986); *Holcomb v. Kincaid*, 406 So.2d 646, 649 (La.Ct.App.1981); *Levy v. Duclaux*, 324 So.2d 1, 10 (La.Ct.App. 1976), *writ denied*, 328 So.2d 887 and 328 So.2d 888 (La.1976); *Nickens v. McGehee*, 184 So.2d 271, 278 (La.Ct.App.), *writ ref'd*, 249 La. 199, 186 So.2d 159 (La.1966); *Vigna v. Allstate Ins. Co.*, 686 A.2d 598, 600 (Me.1996); *Maine Bonding & Cas. Co. v. Douglas Dynamics, Inc.*, 594 A.2d 1079, 1081 (Me.1991); *Gillchrest v. Brown*, 532 A.2d 692, 693 (Me.1987); *Daley v. United Servs. Auto Ass'n*, 312 Md. 550, 541 A.2d 632, 636 (1988); *Allstate Ins. Co. v. Diamant*, 401 Mass. 654, 518 N.E.2d 1154, 1157 (1988); *State Farm Mut. Auto. Ins. Co. v. Descheemaeker*, 178 Mich. App. 729, 444 N.W.2d 153, 154–55 (1989) (per curiam); *Greenman v. Michigan Mut. Ins. Co.*, 173 Mich.App. 88, 433 N.W.2d 346, 348–49 (1988); *Farm Bureau Mut. Ins. Co. v. Hoag*, 136 Mich.App. 326, 356 N.W.2d 630, 633 (1984, appeal denied); *Garvis v. Employers Mut. Cas. Co.*, 497 N.W.2d 254, 257 (Minn.1993); *Clemens v. Wilcox*, 392 N.W.2d 863, 866–67 (Minn.1986); *Artcraft, Inc. v. Lumberman's Mut. Cas. Co.*, 126 N.H. 844, 497 A.2d 1195, 1196 (1985) (per curiam); *New Hampshire Ins. Co. v. Bisson*, 122 N.H. 747, 449 A.2d 1226, 1227 (1982); *SL Indus. v. American Motorists Ins. Co.*, 128 N.J. 188, 607 A.2d 1266 (1992); *Voorhees v. Preferred Mut. Ins. Co.*, 246 N.J.Super. 564, 588 A.2d 417, 420–23 (App.Div.1991), *cert. denied*, 126 N.J. 340, 598 A.2d 897 (1991), *aff'd* 128 N.J. 165, 607 A.2d 1255 (1992); *Gonzales v. Allstate Ins. Co.*, 122 N.M. 137, 921 P.2d 944, 947 (1996); *State Farm Mut. Auto. Ins. Co. v. Ramsey*, 297 S.C. 71, 374 S.E.2d 896 (1988) (per curiam); *Guardian Life Ins. Co. v. Richardson*, 23 Tenn.App. 194, 129 S.W.2d 1107, 1115 (1939); *E–Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 106 Wash.2d 901, 726 P.2d 439, 443 (1986); *Knapp v. Eagle Property Mgmt. Corp.*, 54 F.3d 1272, 1284 (7th Cir.1995); *Travelers Indemnity Co. v. Holloway*, 17 F.3d 113, 115 (5th Cir.1994); *Allstate Ins. Co. v. McCranie*, 716 F.Supp. 1440, 1443 (S.D.Fla.1989), *aff'd, Allstate Ins. Co. v. Manning*, 904 F.2d 713 (11th Cir.1990); *E.E.O.C. v. Southern Pub. Co., Inc.*, 705 F.Supp. 1213, 1219 (S.D.Miss.1988), *aff'd in pertinent part*, 894 F.2d 785 (5th Cir.1990); *State Farm Fire & Cas. Co. v. Hiermer*, 720 F.Supp. 1310, 1315 (S.D.Ohio 1988), *aff'd*, 884 F.2d 580 (6th Cir. 1989); *Continental Cas. Co. v. Synalloy Corp.*, 667 F.Supp. 1550, 1559 (S.D.Ga.1985), *aff'd*, 826 F.2d 1024 (11th Cir.1987); *Bituminous Fire & Marine Ins. Co. v. Izzy Rosen's, Inc.*, 493 F.2d 257, 261 (6th Cir.1974); *Commercial Union Ins. Co. v. Image Control Property Management, Inc.*, 918 F.Supp. 1165, 1170–71 (N.D.Ill.1996); *American States Ins. Co. v. Hanson Indus.*, 873 F.Supp. 17, 26 (N.D.Tex.1995); *Maryland Cas. Co. v. Texas Commerce Bancshares, Inc.*, 878 F.Supp. 939, 942 (N.D.Tex.1995); *Union Mut. Ins. Cos. v. Stotts*, 837 F.Supp. 814, 817 (N.D.Tex.1993); *United Pacific Ins. Co. v. First Interstate Bancsystems*, 690 F.Supp. 917, 918 (D.Mont.1988); *Aetna Cas. & Sur. Co. v. First Sec. Bank*, 662 F.Supp. 1126, 1128 (D.Mont. 1987); *West Am. Ins. Co. v. Bank of Isle of Wight*, 673 F.Supp. 760, 764–65 (E.D.Va.1987); *Western Cas. & Sur. Co. v. Waisanen*, 653 F.Supp. 825, 832 (D.S.D.1987); *American & Foreign Ins. Co. v. Church Schools*, 645 F.Supp. 628, 632

courts disagree, holding that a purely emotional injury constitutes "bodily injury."[3]

## B. Physical Manifestations Are Not Implicit in a Claim for Mental Anguish

■ At trial, Cowan testified that she had experienced headaches, stomachaches, and sleeplessness. But it is undisputed that she never alleged these or *any* physical manifestations of her alleged mental injuries. The court of appeals held "that an allegation of mental anguish implicitly raises a claim for the resulting physical manifestations" such that evidence and damages for physical manifestations accompanying mental anguish and emotional distress will be allowed. 906 S.W.2d at 130–31. We disagree. Though we liberally construe the allegations in the petition in determining the duty to defend, resolving any doubt in favor of the insured, *Heyden*, 387 S.W.2d at 26, we will not read facts into the pleadings for that purpose. *National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139 (Tex. 1997). Accordingly, *even assuming* that physical manifestations are inseparable from mental anguish in some cases, in the context of determining an insurer's duty to defend we will not presume a claim for physical manifestations when none is pleaded.[4]

In concluding otherwise, the court of appeals relied primarily upon *Bulgerin v. Bulgerin*, 724 S.W.2d 943 (Tex.App.—San Antonio 1987, no writ). *Bulgerin* involved an appeal from a jury trial in which the trial court submitted a damage question on "physical pain and mental anguish" for a claim of intentional infliction of emotional distress, when there was no allegation of physical manifestation. *Id.* at 944–45. There was, however, evidence of the claimant's nausea, loss of menstrual periods, bulimia, and insomnia. *Id.* at 945. The court of appeals held that the claimant's failure to plead physical pain resulting from the emotional distress did not preclude her from recovering for the physical manifestations because the issue was tried by consent, the variance between the pleadings and proof was not substantial, misleading, or a prejudicial departure from the pleadings, and no special exceptions submitted would have given rise to an amendment to the pleadings. *Id.* The court continued:

The character of the injury pled was such that certain physical conditions and pain could result therefrom. Since physical manifestations of mental anguish or distress were closely interrelated and, in fact, inseparable from mental anguish, they cannot be construed to constitute a new or

(E.D.Va.1986); *Kufalk v. Hart*, 636 F.Supp. 309, 311–12 (N.D.Ill.1986); *St. Paul Fire & Marine Ins. Co. v. Campbell County School Dist. No. 1*, 612 F.Supp. 285, 287 (D.Wyo.1985); *Grant v. North River Ins. Co.*, 453 F.Supp. 1361, 1367 (N.D.Ind.1978); *Rolette County v. Western Cas. & Sur. Co.*, 452 F.Supp. 125, 130 (D.N.D.1978); *United States Fidelity & Guar. Co. v. Shrigley*, 26 F.Supp. 625, 627–28 (W.D.Ark.1939).

3. *See American States Ins. Co. v. Cooper*, 518 So.2d 708, 710 (Ala.1987); *First Ins. Co. v. Lawrence*, 77 Hawai'i 2, 881 P.2d 489, 494 (1994); *Pekin Ins. Co. v. Hugh*, 501 N.W.2d 508, 511–12 (Iowa 1993); *Crabtree v. State Farm Ins. Co.*, 632 So.2d 736, 744–45 (La.1994); *Williamson v. Historic Hurstville Ass'n*, 556 So.2d 103, 106–07 (La.Ct.App.1990); *Bloodworth v. Carroll*, 455 So.2d 1197, 1205 (La.Ct.App.1984), *rev'd on other grounds*, 463 So.2d 1313 (La.1985); *Lees v. Smith*, 363 So.2d 974, 980 (La.Ct.App.1978); *Loewenthal v. Security Ins. Co.*, 50 Md.App. 112, 436 A.2d 493, 499 (1981); *Wolfe v. State Farm Ins. Co.*, 224 N.J.Super. 348, 540 A.2d 871, 873–74, *cert. denied*, 111 N.J. 654, 546 A.2d 562 (1988); *Lavanant v. General Accident Ins. Co.*, 79

N.Y.2d 623, 584 N.Y.S.2d 744, 746–48, 595 N.E.2d 819, 821–23 (1992); *Morrison Assurance Co. v. North Am. Reinsurance Corp.*, 588 F.Supp. 1324, 1327 (N.D.Ala.1984), *aff'd*, 760 F.2d 279 (11th Cir.1985); *Allstate Ins. Co. v. Biggerstaff*, 703 F.Supp. 23, 25 (D.S.C.1989); *Omark Indust. v. Safeco Ins. Co.*, 590 F.Supp. 114, 117 (D.Or. 1984); *see also Board of County Supervisors v. Scottish & York Ins. Servs., Inc.*, 763 F.2d 176, 177 n. 1 (4th Cir.1985).

4. This holding does not affect a party's right to introduce evidence of physical manifestations of mental anguish against a tortfeasor under the "fair notice" rule. *See, e.g., State Fidelity Mortgage Co. v. Varner*, 740 S.W.2d 477, 479–80 (Tex. App.—Houston [1st Dist.] 1987, writ denied) (noting that "fair notice" requirement of Tex.R. Civ.P. 45(c) relieves pleader of the burden of pleading evidentiary matters with meticulous particularity). Our holding extends only to the duty to defend under the complaint allegation rule.

different cause of action or a departure from the pleadings.

*Id.*

Cowan also refers us to *Landreth v. Reed,* 570 S.W.2d 486 (Tex.Civ.App.—Texarkana 1978, no writ). In that case, a clinical psychologist was allowed to testify about both the mental condition and physical symptoms of a young girl who had witnessed unsuccessful efforts to revive her younger sister, a drowning victim. *Id.* at 488–89. The court, in *dicta,* noted that "it has been increasingly difficult, if not impossible, to distinguish between strictly mental and strictly physical ailments, because they each *may* manifest themselves by symptoms relating to the other." *Id.* at 489 (emphasis added). While we do not dispute that mental injuries *may* manifest themselves physically we cannot thereby conclude that a claim for mental injuries *necessarily implies* a claim for physical manifestations.

We disagree with *Bulgerin* to the extent that it suggests that physical manifestations are inseparable from mental anguish. On the contrary, by eliminating the need for a party to plead physical manifestations of mental anguish to recover for mental anguish in certain tort cases, this Court has implicitly recognized that physical injuries to the body and mental injuries may be distinct and separate harms. *See St. Elizabeth Hosp. v. Garrard,* 730 S.W.2d 649, 654, *overruled on other grounds by Boyles v. Kerr,* 855 S.W.2d 593, 595–98 (Tex.1993).

■ Our conclusion that a claim for physical manifestations of mental anguish is not implicitly raised by a pleading of mental anguish is also in accord with several other jurisdictions that have addressed this specific issue. *See, e.g., Aim Ins. Co. v. Culcasi,* 229 Cal.App.3d 209, 280 Cal.Rptr. 766, 777 (1991, review denied) ("Emotional or mental injuries are not inextricably linked to bodily injury."); *Interstate Fire & Cas. Co. v. Stuntman, Inc.,* 861 F.2d 203, 204 (9th Cir.1988) ("Emotional or mental injuries are not inextricably linked to bodily injury under California law."); *Garvis v. Employers Mut. Cas.*

*Co.,* 497 N.W.2d 254, 257–58 (Minn.1993) (concluding insurer not required to assume there were physical manifestations when none were alleged); *Knapp v. Eagle Property Management Corp.,* 54 F.3d 1272, 1285 (7th Cir.1995) (refusing to take judicial notice that depression is often manifested physically, applying Wisconsin law).

Thus, because Cowan did not plead any physical manifestations of her alleged mental injuries, she did not plead a "bodily injury" such that Trinity's duty to defend was triggered.[5] Even if Cowan had amended her pleadings to allege "bodily injury," Trinity contends that coverage would nevertheless be precluded because there was no "occurrence," as that term is used in its policy. We now turn to that issue.

## II. Occurrence

■ Trinity's policy defines "occurrence" as "an accident, including exposure to conditions, which results in bodily injury or property damage during the policy period." There was no "occurrence" under the facts of this case, Trinity argues, because there was no "accident." The term "accident" is undefined in the policy.

It is undisputed that Gage intentionally made the copies of Cowan's photographs and showed them to his friends, although Gage testified that he did not intend for Cowan to learn of his actions. Relying on *Republic National Life Insurance Co. v. Heyward,* 536 S.W.2d 549 (Tex.1976), among other cases, the court of appeals held that an "accident" includes the unforeseen and unexpected consequences of otherwise intentional acts and consequently, that an "occurrence" takes place when the resulting injury or damage was unexpected or unintended, regardless of whether the insured's acts were intentional. 906 S.W.2d at 129. Applying this standard, it held that there was an "occurrence" because Gage did not intend that Cowan learn of his actions. *Id.* We disagree.

*Heyward,* which involved a claim for accidental death benefits under a group life in-

---

5. Because we resolve this case on other grounds, we do not decide whether Cowan's headaches, stomachaches, and sleeplessness, as proved at trial, would be a bodily injury sufficient to invoke Trinity's duty to indemnify.

surance policy, was principally concerned with whether Bennie Heyward's murder was by "accidental means." *Heyward*, 536 S.W.2d at 552. Applying what has come to be known as the *Hutcherson* test, *see Hutcherson v. Sovereign Camp, W.O.W.*, 112 Tex. 551, 251 S.W. 491 (1923), the Court held that whether the killing was accidental is determined from the viewpoint of the insured, that is, whether the deceased should have reasonably anticipated that his conduct would probably bring about his own death. *Heyward*, 536 S.W.2d. at 554. The Court's main concern was with how Heyward's death might be accidental even though it resulted from injuries intentionally inflicted by another. *Id.* at 553.

More significant for this case, however, *Heyward* emphasized that whether an event is accidental is determined by its effect. Thus, the Court held that an effect that "cannot be reasonably anticipated from the use of [the means that produced it], an effect which the actor did not intend to produce and which *he cannot be charged with the design of producing*, is produced by accidental means." *Id.* at 555 (citing *International Travelers' Ass'n v. Francis*, 119 Tex. 1, 23 S.W.2d 282, 284–285 (1930)) (emphasis added); *see also Pacific Mut. Life Ins. Co. v. Schlakzug*, 143 Tex. 264, 183 S.W.2d 709, 710–11 (1944) (also citing *International Travelers' Ass'n v. Francis'* definition of accident). Rather than supporting coverage in this case, as the court of appeals held, we think that *Heyward* compels the conclusion that Gage's actions were not accidental.

This holding is also consistent with *Argonaut Southwest Insurance Co. v. Maupin*, 500 S.W.2d 633 (Tex.1973). In that case, Maupin Construction Company removed dirt from property under an agreement it had with an individual who Maupin mistakenly believed was the property owner. When the true owner subsequently sued Maupin for trespass, coverage became an issue. The Argonaut policy provided coverage for "injur[ies] to or destruction of property ... caused by accident." 500 S.W.2d at 634 n. 1. The policy, in turn, defined "accident" as "occurrence." *Id.* "Occurrence" was defined as "(a) an accident, or (b) in the absence of

an accident, a condition for which the insured is responsible which during the policy period causes physical injury to or destruction of property which was not intended." *Id.* In rejecting Maupin's argument that the removal of the dirt from the property was an "accident," the Court stated:

> The plaintiff's act in trespassing upon the Meyers' property did not constitute an accident. They did what they intended to do by removing the [dirt] from the property. The fact that they were unaware of the true owner of the property has no bearing upon whether the trespass was caused by an accident. The respondent's acts were voluntary and intentional, even though the result or injury may have been unexpected, unforeseen and unintended. We conclude there was no coverage under the policy for damages caused by mistake or error as to the ownership of the property in question. The damage was not an accident or occurrence within the meaning of this policy.

*Id.* at 635. This Court summarily concluded that *Massachusetts Bonding and Insurance Co. v. Orkin Exterminating Co.*, 416 S.W.2d 396 (Tex.1967), which concerns only whether negligent conduct is an accident, was inapplicable. *Maupin*, 500 S.W.2d at 634. *Maupin* involved the tort of trespass, in which the only relevant intent is that of the actor to enter the property. The actor's subjective intent or awareness of the property's ownership is irrelevant. *See, e.g, Brannon v. Gulf States Energy Corp.*, 562 S.W.2d 219, 224 (Tex.1977) (noting that one who mistakenly claims superior title may be a trespasser in good faith); *McDaniel Bros. v. Wilson*, 70 S.W.2d 618, 621 (Tex.Civ.App.—Beaumont 1934, writ ref'd) (holding that "every unauthorized entry upon land of another is a trespass" even if no damage is done and "the intent or motive prompting the trespass is immaterial").

As in *Maupin*, we conclude that Gage's conduct was not an "accident." He did exactly what he intended to do when he purposefully copied the photographs and showed them to his friends. That Gage did not expect or intend Cowan to learn of his actions is of no consequence to our determina-

tion of whether his actions were an "accident." *See Maupin*, 500 S.W.2d at 635 (quoting *Thomason v. United States Fidelity & Guar. Co.*, 248 F.2d 417, 419 (5th Cir. 1957)). Nor did Gage negligently invade Cowan's privacy; he intentionally made the copies of her photographs and showed them to his friends. We conclude, therefore, that there was no coverage under the policy for damages caused as a result of Gage's invasion of Cowan's privacy.

Our recent decision in *State Farm Fire & Casualty Co. v. S.S.*, 858 S.W.2d 374, 377 (Tex.1993), which turned on an interpretation of an intentional injury exclusion, does not support a contrary conclusion. Comparing the intentional injury exclusion in *S.S.* to the definition of accident in *Heyward*, we wrote that " 'a person insured against injury effected through accidental means would consider himself insured against such a casualty, since the very purpose of such insurance is to provide indemnity against any fortuitous, unexpected, or undesigned injury.' " *Id.* at 377 (quoting *Heyward*, 536 S.W.2d at 557). This does not necessarily mean, however, that "accidental means" as defined in *Heyward* and "intentional injury" as we construed it in *S.S.* are opposite sides of the same coin. Nor are we concerned here with the scope of the intentional injury exclusion. Rather, Gage's conduct was not an "accident" because the injury to Cowan, the invasion of her privacy, is of a type that "ordinarily follow[s]" from Gage's conduct and the injuries could be "reasonably anticipated from the use of the means, or an effect" that Gage can "be charged with ... producing." *See S.S.*, 858 S.W.2d at 377 (quoting *Heyward*, 536 S.W.2d at 555–56). To hold otherwise would inappropriately enhance rather than minimize the moral hazard inherent in insurance. *See* KENNETH S. ABRAHAM, DISTRIBUTING RISK: INSURANCE, LEGAL THEORY, AND PUBLIC POLICY 14–15 (1986) (explaining how insurance inevitably tends to reduce an insured's incentives to maximize loss-prevention measures); *see also Connecticut Gen. Life Ins. Co. v.*

*Shelton*, 611 S.W.2d 928, 930–31 (Tex.Civ. App.—Fort Worth 1981, writ ref'd n.r.e.).

■ We also reject Trinity's argument, however, that if an actor intended to engage in the conduct that gave rise to the injury, there can be no "accident." First, this construction of the term "accident" would render surplusage the intentional injury exclusion of many insurance policies. *See Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133–34 (Tex.1994) (stating that each part of an insurance contract should be given effect). More importantly, adopting Trinity's approach would render insurance coverage illusory for many of the things for which insureds commonly purchase insurance. For example, consider the hunter who deliberately fires a gun at what he believes to be a deer but is actually a person. Though firing the gun was intentional, the harm can reasonably be characterized as an "accident." Yet Trinity's proposed construction would provide no coverage. We think such a construction would also conflict with our holding that an "accident" includes the "negligent acts of the insured causing damage which is undesigned and unexpected." *See Orkin Exterminating Co.*, 416 S.W.2d at 400.

While older insurance policies defined "occurrence" as "an accident ... which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured," *see, e.g., Travelers Ins. Co. v. Volentine*, 578 S.W.2d 501, 503 (Tex.Civ. App.—Texarkana 1979, no writ), the definition of "occurrence" at issue contains no such language and the court of appeals erroneously inferred that it did. That same "standpoint of the insured" language is now found in the intentional injury exclusions contained in many standard policies.[6] We note, however, that even under policies with that definition of "occurrence," Gage's conduct would preclude coverage. *See, e.g., Baldwin v. Aetna Cas. & Sur. Co.*, 750 S.W.2d 919, 921 (Tex.App.—Amarillo 1988, writ denied) (deliberate operation of overloaded trucks in violation of state law is not an "occurrence");

---

**6.** The Gages' policy excludes coverage for bodily injury or property damage "caused intentionally by or at the direction of the insured." Because we decide Gage's conduct is not an "accident," we do not reach the question of whether the intentional injury exclusion also applies to Gage's conduct.

*Houston Petroleum Co. v. Highlands Ins. Co.*, 830 S.W.2d 153, 156 (Tex.App.—Houston [1st Dist.] 1990, writ denied) (exposure to fraudulent promises, false representations, and untrue statements are not "occurrences"); *Columbia Mut. Ins. Co. v. Fiesta Mart, Inc.*, 987 F.2d 1124, 1128 (5th Cir.1993) (fraudulent acts not an "occurrence").

### III. No Duty to Investigate Coverage

Finally, Cowan argues that, because Trinity did not investigate whether there was a reasonable basis for denying coverage after Gage sought coverage, it cannot complain about the subsequent developments in the *Cowan v. Gage* suit. To the contrary, under the "complaint allegation rule" an insurer is entitled to rely solely on the factual allegations contained in the petition in conjunction with the terms of the policy to determine whether it has a duty to defend. "The duty to defend is not affected by facts ascertained before suit, developed in the process of litigation, or by the ultimate outcome of the suit." *American Alliance Ins. Co. v. Frito–Lay, Inc.*, 788 S.W.2d 152, 154 (Tex.App.—Dallas 1990, writ dism'd). Thus, there was no duty to investigate coverage under these facts.

### IV. Conclusion

Because we hold that Cowan's alleged injuries were not "bodily injuries" resulting from a covered "occurrence," as those terms are defined in Trinity's insurance policy, we reverse the judgment of the court of appeals and render judgment that Cowan take nothing.