**GREENWOOD INSURANCE GROUP, INC., Appellant,**

v.

**UNITED STATES LIABILITY INSURANCE COMPANY, Appellee.**

**No. 01–03–00112–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

June 17, 2004.

**446**

Timothy M. McCloskey, McCloskey & Herberger, Houston, TX, Vincent L. Marable, III, Paul Webb. P.C., Wharton, TX, for Appellant.

Lisa Gaye Mann, Neal David Kieval, Phillips & Akers, P.C., Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices JENNINGS and HIGLEY.

## OPINION

SHERRY RADACK, Chief Justice.

The issue before the Court is whether an insurance broker's professional liability policy provides coverage to the broker for two suits brought against the broker by its client, based on the broker's procurement of coverage for the client from an insurer that subsequently became insolvent. To decide this issue, we must examine an insolvency exclusion in the professional liability policy. The trial court, after reviewing the policy, concluded that it provided no coverage to the broker and granted summary judgment in favor of the broker's insurer. We affirm.

## BACKGROUND

### 1. The relationship between Greenwood and All–Tex

Appellant, Greenwood Insurance Company ("Greenwood") is an insurance bro-ker, and All–Tex Roofing, Inc. ("All–Tex") is its client. On behalf of All–Tex, Greenwood secured a $2 million per occurrence comprehensive general liability insurance policy. Greenwood placed the first $1 million of primary coverage with Resure, Inc., a surplus lines carrier with a "B" rating. Greenwood also obtained an excess policy from United National Insurance Company ("United National").

### 2. The Guillen Case

While the Resure policy was in place, Braulio Guillen filed a personal injury suit against All–Tex. The Guillen case resulted in a judgment against All–Tex for $1.3 million dollars. The excess insurer, United National, paid a portion of the damages against All–Tex, but Resure had been declared insolvent two years earlier and provided no primary coverage for All–Tex.

### 3. All–Tex sues Greenwood

All–Tex, in turn, sued its broker, Greenwood, in two separate suits because the risk that Greenwood had placed with Resure did not provide any primary coverage as a result of Resure's insolvency. In the first suit,[1] All–Tex alleged that Greenwood was negligent for failing to: (1) ascertain the financial condition of Resure before placing coverage, (2) stay apprised of Resure's solvency, (3) notify the Commission of Insurance regarding reasonable doubt about Resure's stability, (4) place All–Tex's insurance coverage through an admitted carrier, (5) obtain an excess policy that would have "dropped down" in the event that Resure became insolvent, and (6) disclose that Greenwood did not possess sufficient knowledge and expertise to determine the eligibility of a surplus lines insurer. All–Tex also alleged that Green-

---

**1.** *All–Tex Roofing, Inc. v. Greenwood Ins. Group, et al.,* Cause No. 99–28656, in the

152nd District Court of Harris County, Texas.

wood had violated the DTPA by representing that (1) the policy issued by Resure would provide $1 million in primary coverage for covered claims, (2) the Resure policy had characteristics, uses and benefits that it did not, (3) the policy was of a particular standard or grade when it was of another, (4) the policy conferred rights, remedies or obligations which it did not have, and (5) the Illinois Guaranty Fund would pay claims against Resure of up to $300,000 per occurrence. Finally, All–Tex alleged that Greenwood had failed to (6) disclose information concerning Resure, in an attempt to induce All–Tex into a transaction that it would not have entered into had it known about the information, (7) properly advise All–Tex about the types of coverage that were needed to ensure that All–Tex was at all times properly insured, and (8) to obtain excess insurance that would "drop down" if a primary insurer became insolvent.

All–Tex also filed a second suit against Greenwood, in which it also alleged that Greenwood had failed to provide "drop down" coverage in the event of a primary insurer's insolvency and had failed to advise Greenwood about the types of insurance coverage needed to ensure that it was properly insured.

### 4. Greenwood defended by USLIC

Greenwood called upon its own insurer, United States Liability Insurance Company (USLIC), to defend it in the All–Tex lawsuits. USLIC defended Greenwood, under a reservation of rights, and obtained a summary judgment in favor of Greenwood by arguing that (1) the case was barred by limitations and (2) the *Guillen* claim was not covered by the Resure policy because of an employee exclusion in the policy.

### 5. USLIC brings a declaratory judgment action

However, after this Court found that the summary judgment had been granted erroneously and remanded the case to the trial court,[2] USLIC filed a declaratory judgment action contending that it owed no duty to defend or indemnify Greenwood for losses arising out of the All–Tex lawsuits.

## PROPRIETY OF SUMMARY JUDGMENT

USLIC filed a motion for summary judgment in the declaratory judgment action, contending that it had no duty to defend or indemnify Greenwood because the professional liability policy issued to Greenwood contained an "insolvency exclusion," which USLIC argued applied to prevent coverage because Greenwood had obtained coverage for All–Tex with a company that did not meet certain standards set forth in the policy.

### 1. Standard of review and burden of proof

We review the appeal under the usual standards of review applicable to traditional motions for summary judgment. TEX.R. CIV. P. 166a(c); *see Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex.1995) (all evidence favorable to nonmovant taken as true and reasonable inferences indulged in nonmovant's favor); *Nixon v. Mr. Property Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex. 1985) (defendant-movant bears burden to show no genuine issue of material fact and entitlement to judgment as matter of law).

### 2. Law applicable to interpretation of insurance policies

▮▮▮ Insurance policies are controlled by rules of interpretation and construction

2. *See All–Tex Roofing, Inc. v. Greenwood Ins. Group, Inc.,* 73 S.W.3d 412 (Tex.App.-Houston [1st Dist.] 2002, pet. denied).

applicable to contracts generally. *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex.1995). The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument. *Id.* Terms in contracts are given their plain, ordinary, and generally accepted meaning unless the contract itself shows that particular definitions are used to replace that meaning. *W. Reserve Life Ins. v. Meadows,* 152 Tex. 559, 261 S.W.2d 554, 557 (1953). If a written contract is so worded that it can be given a definite or certain legal meaning, it is not ambiguous. *Nat'l Union Fire,* 907 S.W.2d at 520. The interpretation of an unambiguous contract is a question of law for the court. *Perry v. Houston Indep. Sch. Dist.,* 902 S.W.2d 544, 547 (Tex.App.-Houston [1st Dist.] 1995, writ dism'd w.o.j.). If an insurance policy is ambiguous, however, it will be interpreted in favor of the insured. *Grain Dealers Mut. Ins. Co. v. McKee,* 943 S.W.2d 455, 458 (Tex.1997).

### 3. Duty to defend

▇▇▇▇ An insurer's duty to defend is determined under the "eight-corners" rule by looking to the allegations in the pleadings and the language of the insurance policy. *Nat'l Union Fire Ins. v. Merchs. Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex.1997). In applying the eight-corners rule, a court must give the allegations in the petition a liberal interpretation. *Id.* Generally, an insurer has a duty to defend if the petition potentially states a cause of action that falls within the policy coverage. *Id.*

With the above principles in mind, we turn to the issue of whether USLIC had a duty to defend Greenwood in the All–Tex litigation. The professional liability policy issued to Greenwood provided the following coverage:

> [USLIC] will pay on behalf of [Greenwood] any Loss excess of the Deductible not exceeding the Limit of Liability to which this coverage applies that [Greenwood] shall become legally obligated to pay because of Claims first made against [Greenwood] during the Policy Period or if applicable, during any Extension Period, for Wrongful Acts of [Greenwood] or because of Personal Injury arising out of Wrongful Acts of [Greenwood].

The policy also contained the following insolvency exclusion: [3]

> *This policy does not apply to,* and [USLIC] will not defend or pay Loss for, *any Claim[4] arising out of, directly or indirectly resulting from, based upon or in any way involving* any actual or alleged:

> > *Placement of a risk or an insurance or reinsurance contract,* policy or other risk transfer mechanism, device or funding vehicle *with any insurance company,* reinsurer, self-insured trust, group insurance trust, risk retention group, joint underwriting association or other risk assuming entity *that is not rated B+ or higher by A.M. Best Company at the time of placement and*

> > 1. *becomes insolvent or bankrupt*

---

**3.** All emphasis in the quoted text is that of this Court. Emphasis appearing in the original has been removed.

**4.** The professional liability policy defines a "Claim" as "any written notice received by [Greenwood] that any person or entity intends to hold [Greenwood] responsible for a Wrongful Act," or "any judicial or administrative proceeding initiated against [Greenwood] seeking to hold [Greenwood] responsible for a Wrongful Act, including any appeal therefrom."

2. is undergoing receivership, rehabilitation, or liquidation proceedings; or

3. fails to meet all or part of any legal or financial obligation.

Such Claim is not covered by this Policy regardless of whether the placement is alleged to have occurred alone, in combination with, or in a sequence with any Wrongful Act or legal obligation which is covered by the Policy.

USLIC presented summary judgment proof that, at the time Greenwood procured the Resure policy for All–Tex, Resure was rated "B" by A.M. Best Company, not "B+" as required by the terms of the insolvency exclusion. USLIC presented further summary judgment proof that, while the Resure policy was in place, and while the *Guillen* case was pending against All–Tex, Resure was placed into receivership. Greenwood did not submit any controverting evidence on the issues of Resure's rating or insolvency.

Although never decided in Texas, numerous other courts have upheld insolvency exclusions in professional liability policies, such as the one in this case. In *Barron v. Scaife*, 535 So.2d 830 (La.App. 2nd Cir.1988), the victim of a car accident sued her insurance broker after discovering that her insurance carrier was insolvent. *Id.* at 831. The broker, in turn, filed a claim with its professional liability insurer, seeking indemnification for any amounts it should be adjudged liable in the underlying suit. *Id.* The professional liability insurer denied coverage based on an exclusion for any claims "arising from or related to ... the insolvency, receivership, bankruptcy or liquidation of any insurance company." *Id.* at 832. The Louisiana court of appeals held that the clear and unambiguous language of the policy excluded coverage, even for claims that the broker intentionally failed to inform its client of the insurer's insolvency. *Id.* at 832–33.

In *St. Paul Fire Ins. Co. v. Cohen–Walker, Inc.*, 171 Ga.App. 542, 320 S.E.2d 385 (1984), an insurance broker's client sued the broker, alleging that the broker had procured medical insurance for the client with an insurer that became insolvent. *Id.* at 386. The broker then turned to its own professional liability insurer for coverage. *See id.* at 387. The professional liability policy provided coverage to the broker for "loss caused by negligence in your insurance business," but excluded coverage for "claims resulting from the inability of an insurance company to pay its debts. This includes claims related to an insurance company involved in receivership or liquidation proceedings." *Id.* The Georgia court of appeals held that the language of the policy was clear and unambiguous and excluded coverage when the injury giving rise to the claim was the recommended insurance company's inability to pay a claim due to insolvency. *Id.* at 388.

In *Kleneic v. White Lake Marine Corp.*, 144 A.D.2d 341, 533 N.Y.S.2d 909, 910 (1988), the court held that the terms of an insolvency exclusion, such as that present in this case, "are clear and broad, and extend to any claim which arises out of or in connection with the financial insolvency of any insurer." *Id.* at 910. Nevertheless, the court found that the errors and omissions insurer could not rely on the clause because of an unreasonable *delay in providing notice of the disclaimer. Id.*

In *Transamerica Ins. Co. v. Snell*, 627 So.2d 1275 (Fla.App. 1st Dist.1993), the plaintiff, Snell, sued an insurance agency, Tison and Associates, that had procured health insurance for Snell's employer with an insurer that later became insolvent and was unable to pay Snell's claims. *Id.* at

1276. Snell then sought a declaratory judgment that Tison's error and omissions insurer, Transamerica, was liable for Tison's errors. *Id.* Transamerica denied coverage to Tison based on a policy exclusion for "any claim arising out of insolvency, receivership, or bankruptcy of any organization (directly or indirectly) in which [Tison] has placed or obtained coverage ...". *Id.* The Florida court of appeals held that "Snell's action against Tison and Associates is within the clear and unambiguous insolvency exclusion of the Transamerica policy, and Tison and Associates is thus not covered for this risk under the Transamerica policy." *Id.*

 In its response to USLIC's motion for summary judgment, Greenwood does not argue or distinguish the cases cited above. Instead, Greenwood argues that because some of the allegations of the All–Tex petitions are unrelated to, and independent of, Resure's insolvency, USLIC should have to defend the entire case, despite the existence of the insolvency exclusion. Specifically, Greenwood claims that the *Guillen* lawsuit would never have been covered by the Resure policy because of an exclusion in the Resure policy for bodily injury claims by employees. Greenwood argues, therefore, that any claims by All–Tex arising out of an alleged failure to procure the appropriate coverage is a separate and independent loss from any loss caused by Resure's insolvency. Greenwood also alleges that All–Tex's DTPA claims based on Greenwood's failure to accurately represent the coverage that it would procure would require a defense of the entire case by USLIC, even if All–Tex's claims relating directly to the Resure insolvency, standing alone, would not. Essentially, Greenwood argues that, because several of the claims against it do not "arise out of" Resure's insolvency, All–Tex's petitions state a cause that potential-

ly falls within coverage and thus triggers USLIC's duty to defend under Greenwood's professional liability policy. We disagree.

The professional liability policy excludes all claims *"arising out of, directly or indirectly resulting from, based upon or in any way involving"* placement of a risk with an entity that is not rated B+ or higher, and which becomes insolvent or bankrupt. This broadly-worded language excludes, not only claims "arising out of" Resure's bankruptcy, but also claims "in any way involving" Resure's bankruptcy. Resure's bankruptcy set into motion a chain of events that caused All–Tex to sue Greenwood, and, in turn, led Greenwood to call on USLIC, its professional liability carrier, for defense and indemnity. Furthermore, there is no evidence that Resure denied All–Tex coverage based on the employee exclusion. Thus, Greenwood's argument that the Resure policy *might* not have covered the loss is mere speculation. It is undisputed that **Resure did not deny coverage to All–Tex** based on the employee exclusion-it became insolvent and could not cover any loss caused by the *Guillen* suit. Thus, all causes of action alleged in both of All–Tex's petitions arise from or relate to Resure's insolvency. All–Tex's claims relating to the employee exclusion of the Resure policy are not, as Greenwood argues, an independent cause of its loss. As such, all claims asserted by All–Tex against Greenwood are expressly excluded from Greenwood's professional liability coverage through the insolvency exclusion in the policy.

### 4. Ripeness of Indemnity Issue

 Greenwood contends that the trial court erred by granting summary judgment on USLIC's duty to indemnify Greenwood because the issue was not yet ripe. An insurer's duty to defend and duty to indemnify are distinct and separate

duties. *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821–22 (Tex.1997). Thus, an insurer may have a duty to defend but, eventually, no duty to indemnify. *Farmers Texas County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex.1997). For example, a plaintiff pleading causes of action based on both negligent and intentional conduct may trigger an insurer's duty to defend, but a finding that the insured acted intentionally and not negligently may negate the insurer's duty to indemnify. *Id.* Such a fact would not be known until after a trial, thus the duty to indemnify would not be ripe until the trial was completed. However, the duty to indemnify may be justiciable before the insured's liability is determined in the liability lawsuit when the insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate any possibility that the insurer will ever have a duty to indemnify. *Id.*

■ Greenwood argues that USLIC's duty to indemnify was not ripe because there was a fact issue yet to be determined. Specifically, Greenwood argues that there is a question of fact about whether Guillen was an employee of All–Tex. Greenwood contends that if Guillen was an employee of All–Tex, there is a provision of the Resure policy that would exclude coverage, and that, as a result, All–Tex's damages would have been caused by Greenwood's failure to obtain a policy that provided the necessary coverage, not by its placement of the risk with an insurer that became insolvent.

As we stated earlier, it is undisputed that Resure did not deny coverage to All–Tex based on any policy provision. Instead, Resure did not pay because it became insolvent. Thus, any question of fact based upon whether Resure may have eventually paid or denied coverage is irrel-evant. All–Tex's losses were not caused by Resure's denial of coverage.

In this case, there is no fact issue to be determined and the same reasons that negate the duty to defend likewise negate any possibility that the insurer will ever have a duty to indemnify. *See Griffin*, 955 S.W.2d at 82. Accordingly, we hold that the trial court did not err by granting summary judgment on USLIC's duty to indemnify.

### 5. *Waiver and Estoppel*

■ Greenwood argues that the trial court erred by granting summary judgment to USLIC even though Greenwood had pleaded the affirmative defenses of waiver and estoppel. Specifically, Greenwood claims that USLIC never reserved its rights under the "dishonest act exclusion," and that because it defended for two years before withdrawing, it should be estopped from denying coverage under that clause. We have held that coverage for all of All–Tex's claims against Greenwood were excluded by the insolvency exclusion of the professional liability policy, not the dishonest act exclusion. Thus, the issue of whether USLIC properly reserved its rights under the dishonest act exclusion is irrelevant.

### CONCLUSION

We affirm the summary judgment.

Justice JENNINGS, concurring.

TERRY JENNINGS, Justice, concurring.

I write separately to emphasize that this declaratory judgment action over insurance coverage boils down to the construction of an unambiguous contract.

Appellant, Greenwood Insurance Group, Inc. (Greenwood), challenges the trial court's rendition of summary judgment in favor of appellee, United States Liability

Insurance Company (USLIC), which declared that USLIC is under no duty to "defend ... or indemnify" or "defend and/or indemnify" Greenwood, under an insurance agents' and brokers' professional liability insurance policy, in two lawsuits brought against Greenwood by All–Tex Roofing, Inc. (All–Tex).[1] In three issues, Greenwood contends that the trial court erred in declaring that USLIC owed no duty of defense and no duty of indemnification to Greenwood for all claims asserted against Greenwood by All–Tex and in granting summary judgment with respect to Greenwood's affirmative defenses of waiver and estoppel.

### Background

Greenwood, an insurance agent and broker, purchased an insurance agents' and brokers' professional liability policy from USLIC that provided Greenwood with coverage for its alleged negligent acts or omissions arising from the services it rendered for others as an insurance agent or broker. The policy contained the following exclusion of coverage:

> This policy does not apply to, and [USLIC] will not defend or pay Loss for, *any Claim arising out of, directly or indirectly resulting from, based upon or in any way involving any actual or alleged:*
>
> . . . .
>
> L. *Placement of* a risk or *an insurance* or reinsurance contract, *policy* or other risk transfer mechanism, device or funding vehicle *with any insurance company,* reinsurer, self-insured trust, group insurance trust,

risk retention group, joint underwriting association or other risk assuming entity *that is not rated B+ or higher by A.M. Best Company at the time of placement and*

1. *becomes insolvent* or bankrupt
2. is undergoing receivership, rehabilitation, or liquidation proceedings; or
3. fails to meet all or part of any legal or financial obligation.

Such claim is not covered by this Policy regardless of whether the placement is alleged to have occurred alone, in combination with, or in a sequence with any Wrongful Act or legal obligation which is covered by this Policy.

(Emphasis added.)

Greenwood subsequently obtained a $1,000,000 primary layer of comprehensive general liability insurance for All–Tex, one of its clients, from Resure, Inc. (Resure), a surplus lines carrier with a "B" rating, which was a member of the Illinois Insurance Exchange. During the Resure policy period, Braulio Guillen sued All–Tex and obtained a judgment for $1,500,000.[2] However, while Guillen's lawsuit was pending, an Illinois court declared that Resure was insolvent and placed it in liquidation.

All–Tex then sued Greenwood, who turned to USLIC to provide a defense and to indemnify it against All–Tex's claims. USLIC, subject to a reservation of its rights based in part on the above exclusion, assigned counsel to defend Greenwood against All–Tex's claims. While this first All–Tex suit was on appeal to this

---

**1.** *All–Tex Roofing Inc. v. Greenwood Ins. Group, Inc., M.V. Jensvold & Co., Inc., and Exch. Broker Servs.,* Cause No. 99–28656, 152nd District Court Harris County, Texas; *All–Tex Roofing Inc. v. Greenwood Ins. Group, Inc. and M.V. Jensvold & Co., Inc.,* Cause No.

2002–05736, 129th District Court, Harris County, Texas.

**2.** *Braulio Guillen v. All–Tex. Roofing Inc. et al.,* Cause No. 97–09452, 61st District Court Harris County, Texas.

Court,[3] All–Tex filed a second lawsuit against Greenwood, alleging a cause of action for breach of contract. After defending Greenwood for almost two years, USLIC filed the instant case seeking a declaration that it did not owe Greenwood a duty to defend or indemnify it against All–Tex's claims.

## Analysis

In its first two issues, Greenwood argues that the trial court erred in declaring that USLIC owed no duty to defend and no duty to indemnify Greenwood because All–Tex "has asserted claims against Greenwood which are *not dependent upon or related to the insolvency* of Resure, Inc." (Emphasis added.) Greenwood contends that, because "such claims asserted against Greenwood have nothing to do with the insolvency of Resure, Inc., the 'insolvency exclusion' does not apply to bar USLIC's defense and indemnity obligations to Greenwood."

Specifically, Greenwood argues that All–Tex has not been damaged by Greenwood's conduct because the judgment in Guillen's lawsuit was never covered under the Resure policy. Greenwood asserts that the Resure policy contained an exclusion for bodily injury claims asserted by any employee of All–Tex and that there is a fact issue as to whether Guillen was an employee of All–Tex. Greenwood thus concludes that "the insolvency and financial condition of Resure, Inc. is absolutely irrelevant and unrelated to any conduct of Greenwood since there would be no coverage under the Resure, Inc. policy in any event." Greenwood contends, moreover, that the "professional negligence claims" asserted by All–Tex are "clearly covered by the USLIC policy and are unrelated to

the insolvency or financial condition of Resure, Inc."

Insurance contracts are subject to the same rules of construction as ordinary contracts. *Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819, 823 (Tex.1997); *Hanson v. Republic Ins. Co.,* 5 S.W.3d 324, 328 (Tex.App.-Houston [1st Dist.] 1999, pet. denied). Accordingly, when a contract permits only one interpretation, we construe it as a matter of law and enforce it as written. *Upshaw v. Trinity Cos.,* 842 S.W.2d 631, 633 (Tex.1992); *Hanson,* 5 S.W.3d at 328. We must strive to effectuate the contract as the written expression of the parties' intent, and we must attempt to give effect to all contract provisions, so that none will be rendered meaningless. *Kelley–Coppedge, Inc. v. Highlands Ins. Co.,* 980 S.W.2d 462, 464 (Tex.1998); *State Farm Life Ins. Co. v. Beaston,* 907 S.W.2d 430, 433 (Tex.1995).

The insurance agents' and brokers' professional liability policy in question expressly provided that it did not apply to, and USLIC would not defend or pay loss for, "any Claim arising out of, directly or indirectly resulting from, based upon or in any way involving any actual or alleged" placement of an insurance policy "with any insurance company ... that is not rated B+ or higher by A.M. Best Company at the time of placement and ... becomes insolvent or bankrupt." The bottom line is that USLIC did not want and did not assume the risk of defending and indemnifying Greenwood for professional liability claims made against it "involving ... any insurance company ... that is not rated B+ or higher ... and ... becomes insolvent." By obtaining insurance for All–Tex from Resure, a "B" rated company, Green-

---

**3.** *See All–Tex Roofing v. Greenwood Ins. Group, Inc.,* 73 S.W.3d 412, 414 (Tex.App.- Houston [1st Dist.] 2002, pet. denied).

wood assumed the risk that Resure would become insolvent and that Greenwood would not be covered for any claims brought against it "in any way involving" Resure.

Here, it is undisputed that Resure had a "B" rating at the time of placement and that it, in fact, became insolvent. Greenwood's arguments that All–Tex's claims "are not dependent upon or related to the insolvency of Resure" matter not. All of the claims asserted by All–Tex against Greenwood, at the very least, *involved* Resure, an insurance company that was not rated "B+" or higher and that became insolvent. Thus, I agree that USLIC had no duty to defend or indemnify Greenwood against the claims made by All–Tex, and I would overrule Greenwood's first two issues.

Moreover, I would overrule Greenwood's third issue, i.e., that the trial court erred in rendering summary judgment with respect to Greenwood's affirmative defenses of waiver and estoppel, because it is premised on the inapplicability of the above exclusion, upon which USLIC based, in part, its reservation of rights.

### Conclusion

For these reasons, I would affirm the judgment of the trial court. Accordingly, I concur in the judgment of this Court.