**FOLSOM INVESTMENTS, INC.,**
et al., Appellants,

v.

**AMERICAN MOTORISTS INSURANCE COMPANY,**
et al., Appellees.

No. 05–99–00659–CV.

Court of Appeals of Texas,
Dallas.

Aug. 31, 2000.

R. Lynn Fielder, Fisk & Fielder, P.C., Dallas, for Appellants.

Leah Kimberly Steele, Jordan & Carmona, Dallas, Veronica M. Czuchna (Carmona), Jordan & Carmona, P.C., Austin, Robert Paul Boudloche, Mason & Boudloche, Fort Worth, James W. Walker, Kevin Lamar Sewell, Cozen and O'Connor, P.C., Dallas, for Appellees.

Before Justices ROACH and FITZGERALD.[1]

## OPINION

Opinion By Justice FITZGERALD.

This is a declaratory judgment action. Five insurance companies, American Motorists Insurance Company, Kemper Lloyds Insurance Company, Houston General Lloyds, Ranger Insurance Company, and Commercial Underwriters Insurance Company, sought a declaration that they had no duty to defend or indemnify their insureds, Folsom Investments, Inc., Folsom Properties, Inc., Folsom Companies Operating, Inc. d/b/a Folsom Companies, Inc., Sabre Realty Management, Inc., Robert Folsom, R. Stephen Folsom, Robert Kennedy, and Dennis Holman (collectively "Folsom"), in a suit arising out of alleged acts of sexual misconduct by one of Folsom's employees. The trial court granted summary judgment for the insurance companies. In two points of error, Folsom contends that, for various reasons, the insurance companies were not entitled to summary judgment. Because we conclude the facts alleged in the underlying petition do not constitute an occurrence under the policies at issue, we affirm the trial court's judgment.

### BACKGROUND

In 1997, Lisa Mizell, her husband Michael Mizell, and Rebekah Ingersoll (collectively "the underlying plaintiffs") sued Folsom and one of its employees, Steve O'Mealey, in Dallas County district court. Lisa Mizell and Ingersoll were former Folsom employees. The underlying plaintiffs alleged that while Lisa Mizell and Ingersoll were employed by Folsom, they experienced gender-based discrimination and harassment and, because of the hostile work environment, they were constructively discharged. All of the underlying plain-

---

1. Justice John Ovard was on the panel at the time of submission and oral argument. Due to his retirement from this Court on July 31, 2000, Justice Ovard did not participate in the issuance of this opinion.

tiffs' allegations stem from the conduct of fellow Folsom employee O'Mealey. The underlying plaintiffs alleged that while Lisa Mizell and Ingersoll worked for Folsom, O'Mealey made unwelcome sexual advances toward them, requested sexual favors, used sexually abusive and vulgar language, and engaged in other verbal and physical conduct. Further, the underlying plaintiffs alleged Folsom knowingly allowed O'Mealey's actions to continue. In their original petition, the underlying plaintiffs asserted claims for intentional infliction of emotional distress; negligent and grossly negligent hiring, training, supervision, and retention of O'Mealey; and assault and battery.[2]

Folsom tendered the defense of the underlying suit to the insurance companies, which had issued general liability insurance policies to Folsom for various policy periods during the years 1991 to 1997.[3] The insurance companies denied a defense and indemnity to Folsom and, thereafter, filed this declaratory judgment action, seeking a declaration that they had no duty to defend or indemnify Folsom.[4] While this action was pending, the parties to the underlying lawsuit settled. The insurance companies filed separate motions for summary judgment asserting they were not required to defend or indemnify Folsom for various reasons. One of the grounds for summary judgment asserted by each of the insurance companies was that the underlying lawsuit did not allege an "occurrence" as required by the policies in question. The trial court granted summary judgment for the insurance companies without specifying the grounds on which its judgment was based. This appeal followed.

## SUMMARY JUDGMENT

■ The standards for reviewing a summary judgment under rule of civil procedure 166a(c) are well established. *See* TEX.R. CIV. P. 166a; *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). The insurance companies, as movants for summary judgment, had the burden of showing there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *See Nixon*, 690 S.W.2d at 548–49. When, as here, a trial court's order granting summary judgment does not specify the ground or grounds relied on for the ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. *See State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993).

## THE INSURANCE COMPANIES' DUTIES TO DEFEND AND INDEMNIFY

■ An insurer's duty to defend and duty to indemnify are distinct and separate duties. *See Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997). When determining an insurer's duty to defend its insured, we look only to the pleadings and the insurance policy. *See id.; Cullen/Frost Bank v. Commonwealth Lloyd's Ins. Co.*, 852 S.W.2d 252, 255 (Tex.App.-Dallas 1993), *writ denied*, 889 S.W.2d 266 (Tex.1994). We focus on the factual allegations in the pleadings rather than on the legal theories asserted. *See Griffin*, 955 S.W.2d at 82. The duty to defend arises if the factual allegations

---

**2.** Michael Mizell sued for loss of consortium of his wife.

**3.** It is undisputed that, although the underlying plaintiffs amended their pleadings three times, Folsom tendered only the underlying plaintiffs' original petition to the insurance companies. Nevertheless, all pleadings alleged a claim for negligent and grossly negligent hiring, training, supervision, and retention of O'Mealey, the only claim upon which Folsom bases its argument that the insurance companies had a duty to defend and indemnify it.

**4.** The insurance companies also sought a declaration that they had no duty to defend or indemnify O'Mealey. O'Mealey and the insurance companies later entered into an agreed interlocutory judgment declaring that the insurance companies have no duty to defend or indemnify O'Mealey. O'Mealey is not a party to this appeal.

against the insured, when fairly and reasonably construed, state a cause of action potentially covered by the policy. *See Cullen/Frost Bank*, 852 S.W.2d at 255. If a petition against an insured alleges only facts that are not covered by the policy, the insurer is not required to defend. *See id.* If the underlying petition does not state factual allegations sufficient to invoke the duty to defend, then even proof of all those allegations could not invoke the insurer's duty to indemnify. *See Reser v. State Farm Fire & Cas. Co.*, 981 S.W.2d 260, 263 (Tex.App.-San Antonio 1998, no pet.); *see also Griffin*, 955 S.W.2d at 84.

■ Each of the insurance companies moved for summary judgment on grounds that it had no duty to defend or indemnify Folsom because the underlying lawsuit did not allege an occurrence as defined in the policies. The insurance policies in question provide coverage for bodily injury caused by an "occurrence." As defined in the policies, "occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policies do not define the term "accident." However, the Texas Supreme Court has adopted the general rule that "where acts are voluntary and intentional and the injury is the natural result of the act, the result was not caused by accident even though that result may have been unexpected, unforeseen, and unintended." *See Wessinger v. Fire Ins. Exch.*, 949 S.W.2d 834, 837 (Tex.App.-Dallas 1997, no writ) (quoting *Argonaut Southwest Ins. Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex.1973)); *see also Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 826–28 (Tex.1997). Thus, to decide whether an act or event satisfies *Argonaut*'s "accident" definition, we perform a two-step analysis. *See Wessinger*, 949 S.W.2d at 837. First, we determine the specific acts alleged to be the cause of the plaintiff's damages and then whether the acts were voluntary and intentional. *See id.* If we determine the acts that produced the alleged injuries were committed involun-

tarily and unintentionally, our inquiry stops there because the results of the acts would be accidental. But if we determine the acts were committed voluntarily and intentionally, we must then decide whether the injuries were a natural result of the acts. When a result is not the natural and probable consequence of an act or course of action, it is produced by accidental means. *See id.* The natural result of an act is the result that ordinarily follows, may be reasonably anticipated, and ought to be expected. *See id.*

■ As part of its second point of error, Folsom contends the insurance companies failed to prove as a matter of law that the underlying lawsuit does not allege an occurrence. To show that the underlying lawsuit alleged an occurrence, Folsom relies only on the underlying plaintiffs' allegations that Folsom was negligent and grossly negligent in its hiring, training, supervision, and retention of O'Mealey. The underlying plaintiffs alleged that, as a direct and proximate result of Folsom's negligent hiring, training, supervision, and retention, Lisa Mizell and Ingersoll suffered actual losses and injury due to the physical assaults, unwanted advances, and sexual harassment inflicted by O'Mealey. Folsom contends that its alleged negligence constitutes an accident under the *Argonaut* analysis because negligence is neither a voluntary nor intentional act.

The insurance companies respond that the underlying plaintiffs' injuries did not result from Folsom's negligence, but rather from O'Mealey's intentional sexual harassment and discrimination. In cases with facts similar to this case, the Fifth Circuit has concluded that, under Texas law, negligence that is related to and interdependent on claims of intentional conduct does not constitute an occurrence for insurance coverage purposes. *See American States Ins. Co. v. Bailey*, 133 F.3d 363 (5 th Cir.1998); *Cornhill Ins. PLC v. Valsamis, Inc.*, 106 F.3d 80 (5 th Cir.1997). We agree.

In *American States Insurance Co. v. Bailey,* two women sued Bailey, who was the pastor-in-charge of First United Methodist Church of Fort Worth, the church, and four associate ministers. *See Bailey,* 133 F.3d at 366. The women alleged Bailey committed various sexual improprieties and that the church and the associate ministers knew or should have known of Bailey's conduct and should have attempted to stop his behavior. *See id.* The women's specific claims against the church and the associate ministers included allegations of negligence, including negligent hiring and supervision of Bailey. *See id.* at 367. The church's insurance carriers sought a declaratory judgment that they had no duty to defend or indemnify their insureds. One of the carriers' policies insured against damages resulting from bodily injury caused by an occurrence. *See id.* at 371. The policy's definition of occurrence was identical to the definition in the instant policies. *See id.*

■ The Fifth Circuit held that, under Texas law, where a third-party's liability is related to and interdependent on other tortious activities, the ultimate issue is whether the underlying tortious activities are encompassed within the definition of "occurrence." *See id.* An insurer has no duty to defend or to indemnify its insured against claims that could not be brought absent the underlying and excluded tortious activities. *See id.* Thus, the court concluded that Bailey's acts were not an accident because they were intentional and the harm caused by the acts was a natural or probable result of those acts. *See id.* at 372. The court further concluded that because Bailey's acts were intentional, the insurance carrier had no duty to defend or indemnify the church or its associate ministers. *See id.; see also Cornhill,* 106 F.3d at 86–88 (plaintiff's claims against former employer for negligent hiring and supervision, among others, based on sexual harassment by plaintiff's former supervisor did not constitute an occurrence as defined in employer's insurance policy).

Folsom contends that this analysis is inappropriate in this case in light of the following clause in the policies entitled "Separation of Insureds":

> Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:
>
> a. As if each Named Insured were the only Named Insured; and
>
> b. Separately to each insured against whom claim is made or "suit" is brought.

According to Folsom, this provision, also known as a severability of interests clause, means that, in performing a coverage analysis in this case, O'Mealey and Folsom should not be treated the same and we should determine whether Folsom's alleged negligence regarding O'Mealey constitutes an occurrence without reference to O'Mealey's conduct.

In support of this argument, Folsom relies on two coverage cases in which the policy contained an exclusion defined in terms of "the insured," as well as a severability of interests clause, and the courts concluded the severability clause required that the exclusion be applied separately to each insured. *See Commercial Std. Ins. Co. v. American Gen. Ins. Co.,* 455 S.W.2d 714, 718–21 (Tex.1970) (employee exclusion); *Walker v. Lumbermens Mut. Cas. Co.,* 491 S.W.2d 696, 698–99 (Tex.Civ.App.-Eastland 1973, no writ) (intentional acts exclusion). Folsom has cited no authority, nor are we aware of any, for the proposition that, in determining whether bodily injury was caused by an "occurrence," which is not defined in terms of "the insured," a severability of interests clause requires courts to examine the acts of each insured independently and without reference to the acts of other insureds. We decline Folsom's invitation to extend the applicability of the severability of interests clause in this manner. *See American Guar. & Liab. Ins. Co. v. 1906 Co.,* 129 F.3d 802, 809–10 (5th Cir.1997) (conclud-

ing, in case applying Mississippi law, that although policy contained severability clause, ultimate issue for coverage purposes was whether employee's intentional misconduct, not allegations of negligence against employer, fell within definition of "occurrence"); *Old Republic Ins. v. Comprehensive Health Care,* 786 F.Supp. 629, 632 (N.D.Tex.1992) (rejecting argument that, in determining whether there was an occurrence, allegations of negligent hiring against employer were severable from allegations of sexual harassment against employee).

 Instead, we elect to follow the approach taken by the Fifth Circuit. *See Bailey,* 133 F.3d at 371–72; *Cornhill,* 106 F.3d at 86–88; *see also Thornhill v. Houston Gen. Lloyds,* 802 S.W.2d 127, 130 (Tex. App.-Fort Worth 1991, no writ) (allegations that liquor store owner was negligent in training and supervising employees were not covered under policy containing liquor liability exclusion where allegations of negligence were related to and interdependent on sale of alcohol). Under this approach, where negligence claims against an employer are related to and interdependent on the intentional misconduct of an employee, the "ultimate issue" for coverage purposes is whether the employee's intentional misconduct falls within the definition of "occurrence." *See Bailey,* 133 F.3d at 371. This approach is consistent with the case law requiring courts to focus on the factual allegations in the pleadings, rather than on the legal theories asserted, in determining an insurer's duty to defend.

Here, Folsom's liability is related to and interdependent on O'Mealey's tortious activities. Thus, we must decide whether O'Mealey's tortious activities are encompassed within the definition of "occurrence." We conclude they are not. O'Mealey's acts of sexual harassment were

not an accident because they were intentional and the harm caused by the acts was a natural or probable result of those acts.[5] *See id.* at 372. Because none of O'Mealey's alleged actions were accidental, it follows that, as a matter of law, no coverage exists for any of the underlying plaintiffs' claims against Folsom. We overrule that portion of Folsom's second point of error in which it complains the insurance companies did not prove as a matter of law that the underlying lawsuit did not allege an occurrence. In light of our disposition of this point, we need not consider Folsom's remaining arguments. *See* TEX.R.APP. P. 47.1.

We affirm the trial court's judgment.

---

**5.** For example, the underlying plaintiffs alleged that Lisa Mizell "was forced to endure O'Mealey displaying his semi-erect penis to her in her office [and] coerced hugs from O'Mealey." They further alleged that O'Mealey would "kiss [Ingersoll] on the neck, prop-osition her to have sex with him, offer to pay her rent if she would be his mistress, ask repeatedly to see her breasts, put his tongue in her ear, give her 'body hugs' and tell her about his sexual prowess."