Mark MALONE, d/b/a Malone Construction Company, Plaintiff,

v.

SCOTTSDALE INSURANCE COMPANY, Defendant.

No. CIV. A. H–00–1871.

United States District Court, S.D. Texas, Houston Division.

Feb. 1, 2001.

624

Richard R. Burroughs, Cleveland, TX, for Mark Malone dba Malone Construction Company, plaintiffs.

Kyle D Giacco, Daw and Ray, Willie Ben Daw, III, Daw & Ray, Houston, TX, for Scottsdale Insurance Company, defendant.

### MEMORANDUM AND ORDER

ATLAS, District Judge.

This is an insurance coverage dispute. Pending before the Court is Defendant Scottsdale Insurance Company's ("Scottsdale") Motion for Summary Judgment [Doc. # 14] ("Defendant's Motion"). Plaintiff Mark Malone, d/b/a Malone Construction Company ("Malone"), has filed his response. *See* Plaintiff's Response to Defendant's Motion for Summary Judgment [Doc. # 15] ("Plaintiff's Response"). Having considered the parties' briefs, all matters of record and the applicable authorities, the Court concludes that Defendant's Motion should be **granted.**

### I. BACKGROUND FACTS

In 1994, the Teste Family Partnership, Ltd. ("Teste") contracted with Malone to construct commercial improvements to its office and warehouse complex in Conroe, Texas. In February 1996, Teste brought suit against Malone in Texas state court, alleging numerous failures to properly construct the improvements (the "*Teste* suit"). *See* Plaintiff's Original Petition (Ex. C to Defendant's Motion). Teste subsequently filed a Seventh Amended Original Petition (Ex. D to Defendant's Motion) ("Seventh Teste Petition"). The Seventh Teste Petition states at the outset: "This case demonstrates the devastating consequences that result when a contractor, only experienced in constructing residential homes, undertakes a construction job for which it is ill-suited—the construction of substantial commercial improvements.... Predictably, the contractor failed miserably in its attempts to construct the commercial improvements." *Id.,* ¶ 1. In support of its claim for "negligent construction of improvements to real property," Teste set forth an extensive list of Malone's failures to properly construct the improvements, naming over forty defects in Malone's work. *Id.,* ¶¶ 11, 14. Judgment was eventually entered against Malone for $178,909.02 in actual damages, $75,000 in attorneys fees and $72,249.83 in pre-judgment interest, in addition to post-judgment interest and costs of court. *See* "Final Judgment" in *Teste* suit (Ex. E to Original Petition), attachment to Notice of Removal [Doc. # 1] ("Malone Petition").

Between January 5, 1995 and August 24, 1995, Malone was insured under a commercial general liability policy issued by Scottsdale (the "Scottsdale Policy").[1] The Policy contained numerous exclusions for property damage caused by faulty workmanship. Malone notified Scottsdale of the *Teste* suit and sought a defense under the Scottsdale Policy. Scottsdale denied coverage, stating that it had no duty to defend Malone. *See* Letter from Cathy Gilchrist, Scottsdale Insurance Company, to Mark Malone, May 3, 1996 (Ex. C to Malone Petition). Scottsdale reiterated its denial of coverage in a letter dated December 29, 1999, in response to a request for indemnification by Malone's attorney. Letter from Cathy Gilchrist to Richard R.

---

1. The policy period for the Scottsdale Policy is listed as January 5, 1995 to January 5, 1996. *See* Scottsdale Policy (Ex. A to Defendant's Motion), Commercial Liability Declarations. However, the Policy was canceled in August 1995 for nonpayment of premiums. *Id.,* "Notice of Cancellation, August 24, 1995." Defendant Scottsdale does not argue that the *Teste* suit arose out of occurrences outside the policy period.

Burroughs, December 29, 1999 (Ex. G to Malone Petition).

On May 5, 2000, Malone filed suit against Scottsdale in the 258th Judicial District of San Jacinto County seeking the costs of his defense and indemnity in the *Teste* suit. Defendant removed to this Court on June 5, 2000 on the basis of complete diversity of citizenship. On November 15, 2000, Defendant moved for summary judgment, asserting that the Scottsdale Policy did not afford Malone coverage for the *Teste* suit.

## II. *SUMMARY JUDGMENT STANDARD*

In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (*en banc*); *Bozé v. Branstetter*, 912 F.2d 801, 804 (5th Cir.1990). Material facts are those facts "that might affect the outcome of the suit under the governing law." *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir.1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The facts are to be reviewed with all "justifiable inferences" drawn in favor of the party opposing the motion. *See Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir.1998) (citing *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the burden of proof at trial. The movant meets this initial burden by showing that the "evidence in the record would not permit the nonmovant to carry its burden of proof at trial." *Smith*, 158 F.3d at 911. The burden then shifts to the nonmovant to demonstrate that summary judgment is inappropriate. *See Morris*, 144 F.3d at 380. This is accomplished by producing "significant probative evidence" that there is an issue of material fact so as to warrant a trial, *see Texas Manufactured Hous. Ass'n v. Nederland*, 101 F.3d 1095, 1099 (5th Cir.1996), *cert. denied*, 521 U.S. 1112, 117 S.Ct. 2497, 138 L.Ed.2d 1003 (1997); *Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 161 (5th Cir.1996); *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir.1995); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.1994), and that is "sufficient to support a jury verdict." *Morris*, 144 F.3d at 380; *accord Doe v. Dallas Indep. School Dist.*, 153 F.3d 211, 215 (5th Cir.1998). In the absence of any proof, the court will not assume that the nonmovant could or would prove the necessary facts. *See McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.), *revised on other grounds upon denial of reh'g*, 70 F.3d 26 (5th Cir.1995); *Little v. Liquid Air Corp.*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)).

## II. *DISCUSSION*

Defendant Scottsdale asserts two grounds for denying coverage to Malone. First, Scottsdale argues that the property damage suffered by Teste was not caused by an "occurrence" as that term is defined in the Scottsdale Policy. Second, Scottsdale contends that the Policy contains several exclusions for property damage caused by the insured's faulty workmanship.

## A. *Duty to Defend*

 In determining an insurer's duty to defend, courts apply the "eight corners" rule, examining the factual allegations in the petition and the language of the insurance policy. *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821–22 (Tex.1997) (citing *American Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 847–48 (Tex. 1994)). A court must focus on the factual allegations rather than the legal theories asserted in reviewing the underlying petition. *Farmers Texas County Mutual Ins. Co. v. Griffin*, 955 S.W.2d 81, 83 (Tex. 1997). The duty to defend is unaffected by facts ascertained before suit, developed in trial, or by the ultimate outcome of the case. *See Argonaut Southwest Ins. Co. v. Maupin*, 500 S.W.2d 633, 635–36 (Tex. 1973); *Reser v. State Farm Fire & Casualty Co.*, 981 S.W.2d 260, 263 (Tex.App.— San Antonio 1998, n.w.h.); *Snug Harbor, Ltd. v. Zurich Ins.*, 968 F.2d 538 (5th Cir.1992).

### 1. Policy Definition of "Occurrence"

 Defendant contends that the Scottsdale Policy does not cover Malone's liability in the *Teste* suit because the damage sustained by Teste was not caused by an "occurrence" as that term is defined in the Policy. Defendant relies primarily on the recent case *Hartrick v. Great American Lloyds Ins. Co.*, 2000 WL 1159603 (Tex.App.—Houston [1st Dist.] 2000, n.w.h.).

The Scottsdale Policy covers bodily injury and property damage caused by an "occurrence" that takes place in the coverage territory. Scottsdale Policy, at 1. The Policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.*, at 11. Defendant Scottsdale contends that the damage sustained by Teste was caused by Malone's faulty workmanship and thus does not constitute an accident.

In *Hartrick*, the plaintiffs discovered construction defects in their home and obtained a judgment against the builder. The builder sought coverage from its insurance company. The definition of "occurrence" under the builder's policy in *Hartrick* was identical to the definition in the Scottsdale Policy. *Id.*, 2000 WL 1159603 *2. The court first noted that, recognizing variation in policy terms and circumstances, "the general rule [is] that a broad form CGL policy does not insure a contractor because his workmanship was faulty." *Id.*, 2000 WL 1159603 *4 (citations omitted). The court then discussed the meaning given to the term "accident" by the Texas Supreme Court in *Mid-Century Ins. Co. v. Lindsey*, 997 S.W.2d 153, 155 (Tex.1999). In *Lindsey*, the court held that an injury is accidental if "from the viewpoint of the insured, [it is] not the natural and probable consequence of the action or occurrence which produced the injury" (citation omitted). The court in *Hartrick* ruled for the insurance company, holding that when "an injury [that] results from voluntary and intentional conduct, here, not preparing the soil and not constructing the foundation in keeping with the promises implied on [the builder] by law, the injury is not an 'accident' and, therefore, not an 'occurrence.'" *Hartrick*, 2000 WL 1159603, at *5.

The Seventh Teste Petition alleges that Malone "failed to construct the improvements in accordance with the architect's plans and specifications which were … approved by the City of Conroe." *Id.*, ¶ 14. These failures were omissions which can only be considered voluntary and inten-

tional, as opposed to accidental.[2] "Lack of compliance with implied warranties, i.e., promises implied as a matter of law, are not accidental, but result from not doing what one must do." *Hartrick*, 2000 WL 1159603, at *6. The court in *Hartrick* observed: "By not doing what it had to do, [the builder] could reasonably anticipate injury to [the plaintiffs]." *Id.* The fact that the Seventh Teste Petition alleges "negligent" construction of improvements to real property does not alter this conclusion. *See American States Ins. Co. v. Bailey*, 133 F.3d 363 (5th Cir.1998); *Folsom Investments, Inc. v. American Motorists Ins. Co.*, 26 S.W.3d 556, 559 (Tex. App.—Dallas 2000, n.w.h.) (noting that negligence that is "related to and interdependent on claims of intentional conduct does not constitute an occurrence for insurance coverage purposes").

The Court agrees. In addition, Plaintiff has offered no authority or argument to rebut Defendant's contention that no "occurrence" was triggered. The Court finds there was no "occurrence" as that term is defined in the Scottsdale Policy. Therefore, Malone is not entitled to coverage under the Policy.

### 2. Policy Exclusions

Scottsdale also points to the existence of several exclusions in the Policy. Scottsdale contends that the Property Damage

exclusions (*see* Scottsdale Policy, at 3, exclusion (j)(5) and (6)), Work Damage exclusion (*see id.*, exclusion (1)), Impaired Property exclusion (*see id.*, exclusion (m)), and Subsidence Exclusion preclude coverage for Malone for damages resulting from the *Teste* suit.

■ The Scottsdale Policy excludes coverage for

#### j. Damage to Property

"Property damage"[3] to:

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.[4]

The language of Property Damage exclusion (j)(5) applies to the allegations in the Seventh Teste Petition. The damage alleged in the Seventh Teste Petition is none other than that caused by Malone's failure to use proper building materials or properly construct and install various components of the structure. Teste's damages clearly "arose out of" Malone's operations. *See Gar–Tex Const. Co. v. Employers Cas.*

---

2. For example, the Seventh Teste Petition alleges that Malone failed to drill concrete piers to the appropriate size and depth; provide appropriate subgrade materials; properly compact the subgrade materials; install specified reinforcement and placement rebars; properly place the concrete used in the construction of the building slab; and use concrete of appropriate strength. *Id.*, ¶ 14(a)-(f). The Petition alleges thirty-five other similar failures on Malone's part to properly construct or install various components of the structure.

3. "Property damage" is defined as "physical injury to tangible property" or "loss of use of tangible property that is not physically injured." Scottsdale Policy, at 12.

4. "Your work" is defined as "work or operations performed by you or on your behalf," and "materials, parts or equipment furnished in connection with such work or operations." The term also encompasses "warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work.'" Scottsdale Policy, at 12.

Co., 771 S.W.2d 639 (Tex.App.—Dallas 1989, writ denied); *Eulich v. Home Indemnity Co.*, 503 S.W.2d 846 (Tex.Civ. App.—Dallas 1973, writ ref'd n.r.e.) (both finding coverage for faulty workmanship excluded by policy provisions excluding coverage for property damage arising out of operations by the insured on the premises).

■ The language of Property Damage exclusion (j)(6) also applies and precludes coverage for Malone.[5] The Seventh Teste Petition alleges that the structures Malone was hired to build were practically inoperable as a result of Malone's numerous failures to build to specification. *Id.*, ¶ 14. *See Houston Building Serv. v. American General Fire and Cas. Co.*, 799 S.W.2d 308, 310 (Tex.App.—Houston [1st Dist.] 1990, writ denied) (finding coverage for faulty workmanship excluded by policy provision stating that policy did not apply to property damage "to that particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it").

The language of the exclusions is unambiguous in its exclusion of coverage for faulty workmanship. Therefore, the Court concludes that Property Damage exclusions (j)(5) and (6) preclude coverage for Malone in the *Teste* suit.[6]

### B. *Duty to Indemnify*

■ The duty to indemnify is triggered by the actual facts establishing liability in the underlying suit. *Pilgrim Enterprises, Inc. v. Maryland Cas. Co.*, 24 S.W.3d 488, 490 (Tex.App.—Houston [1st Dist.] 2000, n.w.h.). No duty to indemnify arises unless the underlying litigation establishes liability for damages covered by the insuring agreement of the policy. *Hartrick*, 2000 WL 1159603, at \*3. A court may determine that the insurer has no duty to indemnify if the factual allegations made in the underlying petition show that no duty to defend exists. *Griffin*, 955 S.W.2d at 84; *see also Folsom Investments, Inc. v. American Motorists Ins.*, 26 S.W.3d 556, 558–59 (Tex.App.—Dallas 2000, n.w.h.) (noting "if the underlying pe-

---

5. Language in Exclusion (j) states, "Paragraph (6) of this exclusion does not apply to 'property damage' included in the 'products-completed operations hazard.' The 'Products-completed operations hazard,' in relevant part, includes all property damage arising out of the insured's work, except 'work that has not been completed or abandoned.'" Scottdale Policy, at 11. Thus, Property Damage exclusion (j)(6) would apply as long as the property damage arose out of work that had not been completed or abandoned. According to the Policy's definition, work is deemed completed "when all the work called for in your [the insured's] contract has been completed" or "when that part of the work done at a job site has been put to its intended use." *Id.* Because the Seventh Teste Petition alleges numerous failures to install various key components of the foundation and fixtures, Malone's work could not be deemed "complete."

6. Having found that the Property Damage exclusions preclude coverage for Malone, the Court declines to determine whether the Impaired Property exclusion also precludes coverage. The Court notes that the Work Damage exclusion and Subsidence Exclusion, also cited by Defendant, do not appear to apply. The Work Damage exclusion does not apply "if the damaged work or the work out of which the damage arises was performed on [the named insured's] behalf by a subcontractor." Scottsdale Policy, at 3, exclusion (1). As Plaintiff notes, the Seventh Teste Petition alleges that Malone hired several subcontractors. *Id.*, ¶¶ 14–17. The Petition does not distinguish between work done by Malone and that done by subcontractors. The Subsidence Exclusion also does not exclude coverage for Malone. The Subsidence Exclusion bars coverage for damage resulting from landslide, mudflow, or the earth's sinking or shifting. The Seventh Teste Petition does not contain allegations which would trigger the Subsidence Exclusion.

tition does not raise factual allegations sufficient to invoke the duty to defend, then even proof of all of those allegations could not invoke the insurer's duty to indemnify") (citing *Reser*, 981 S.W.2d at 263).

 Neither party has submitted evidence from the *Teste* suit, such as a jury charge, which would indicate the causes of action upon which Malone was found liable. However, the Court notes that the factual allegations in the Seventh Teste Petition effectively preclude coverage under the Scottsdale Policy, and thus Scottsdale's duty to indemnify. A court may determine that an insurer has no duty to indemnify "when the insurer has no duty to defend and the same reasons that negate the duty to defend negate any possibility that [the] insurer will ever have a duty to indemnify". *Texas Ass'n of Counties County Government Risk Management Pool v. Matagorda County*, —— S.W.2d ——, 2000 WL 1867945, at *6 (Tex.2000) (citing *Griffin*, 955 S.W.2d at 84). *See also Calderon v. Mid–Century Ins. Co. of Texas*, 1998 WL 898471, at *5 (Tex.App.—Austin 1998, n.w.h.); *Guaranty Nat'l Ins. Co. v. Azrock Indus., Inc.*, 211 F.3d 239, 243 (5th Cir.2000) (noting that duty to defend is broader than duty to indemnify).

Accordingly, the Court finds that Defendant Scottsdale has no duty to indemnify Malone for liability in the *Teste* suit.

## IV. CONCLUSION

The Court concludes that Scottsdale owed no duty of defense to Malone in the *Teste* suit. The allegations in the Seventh Teste Petition do not establish that any property damage resulted from an "occurrence," as that term is defined in the Scottsdale Policy. In addition, the allegations in the Seventh Teste Petition show that Malone was sued for faulty workmanship. The Scottsdale Policy's Property Damage exclusions preclude coverage for faulty workmanship. The Court also concludes that Scottsdale owed no duty of indemnification to Malone. The Scottsdale Policy provides no coverage for liability stemming from the allegations in the Seventh Teste Petition. It is therefore

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 14] is **GRANTED.**

A separate final judgment will be entered forthwith.