**COURTLAND CUSTOM HOMES, INC. Plaintiff,**

v.

**MID–CONTINENT CASUALTY COMPANY Defendant.**

**No. CIV.A. H–04–1089.**

United States District Court, S.D. Texas, Houston Division.

March 23, 2005.

Lee Howard Shidlofsky, Nickens Keeton et al., Austin, TX, for Courtland Custom Homes Inc, Plaintiff.

James Hans Barcus, Envgavl & Hlavinka LLP, John Logan Engvall, Jr., Engvall & Hlavinka, Houston, TX, for Mid–Continent Casualty Company, Defendant.

### ORDER

HARMON, District Judge.

This is an insurance coverage dispute. Pending before the court is the Plaintiff, Courtland Custom Homes, Inc.'s (hereinafter "Courtland") Motion for Partial Summary Judgment (Doc. 6), and the Cross–Motion of Defendant Mid–Continent Insurance Company ("Mid–Continent") for Final Summary Judgment. (Doc. 13.) Courtland filed this declaratory judgment action seeking a ruling from the court that Mid–Continent has a duty to defend Courtland against allegations asserted in an underlying lawsuit styled *Greg and Linda Turman v. Courtland Custom Homes* (Cause No. 03–CV–127872), currently pending in the 268th Judicial District of Fort Bend County, Texas (the "underlying lawsuit"). Having considered the parties' briefs, all matters of record and the applicable authorities, the court concludes that Courtland's Motion should be DENIED and Mid–Continent's GRANTED. The court finds that Mid–Continent has no duty to defend Courtland, and subsequently no duty to indemnify Courtland.

## I. Legal Standard

### A. Summary Judgment

When both parties move for summary judgment, the court reviews each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party. *Ford Motor Co. v. Tex. DOT,* 264 F.3d 493, 498 (5th Cir.2001). Each movant seeking summary judgment must inform the court of the basis of his motion and point out those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the movant bears the burden of proof on an issue,

either because he is the plaintiff or as a defendant asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor. *Fontenot v. Upjohn,* 780 F.2d 1190, 1194 (5th Cir.1986). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material; i.e., only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby,* 477 U.S. 242, 256–57, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The movant need not negate the opposing party's claims nor produce evidence showing the absence of a genuine issue of fact, but may rely on the absence of evidence to support essential elements of the opposing party's claims. *Celotex,* 477 U.S. at 323–25, 106 S.Ct. 2548. However, "[o]n summary judgment the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). If it is evident that the party seeking summary judgment against one who bears the proof burden has no access to evidence of disproof, and ample time has been allowed for discovery, he should be permitted to rely upon the complete absence of proof of an essential element. *Fontenot v. Upjohn,* 780 F.2d at 1195. If the moving party fails to meet its initial burden, the motion must be denied, regardless of the non-movant's response.

*Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994).

If the movant meets his burden, the burden then shifts to the non-movant to set forth specific facts and competent summary judgment evidence to raise a genuine issue of material fact on each essential element of any claim on which he bears the burden of proof at trial. Fed.R.Civ.P. 56(c). The non-moving party may not rest on mere allegations or denials in its pleadings, but must produce affirmative evidence, and specific facts showing that there is a genuine issue for trial. Fed. R.Civ. P. 56(e); *Anderson,* 477 U.S. at 256–57, 106 S.Ct. 2505. The non-movant may point to evidentiary documents already in the record that set out specific facts showing the existence of a genuine issue. *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990). Furthermore, the non-movant does not likewise have to present its own evidence, but may point out genuine issues of fact extant in the summary judgment evidence produced by the movant, if any. *Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186, 198–200 (5th Cir.1988).

## II. Background & Analysis

■ It is alleged that Courtland, a residential home builder and general contractor, constructed a home pursuant to a contract for Steven and Robin Rosen ("Rosens") from whom Greg and Linda Turman (the "underlying plaintiffs" or "Turmans") bought the home. Subsequent to their home's completion, the Turman's brought suit against Courtland. The Turman's Second Amended Petition (Doc. 6, Exh. A–3)[1], raises causes of action under the DTPA, for breach of war-

---

1. The court looks to the most recent amended pleading on which the insurer has based its refusal to defend. *Federated Mutual Ins. Co. v. Grapevine Excavation Inc.,* 197 F.3d 720,

725 n. 24 (5th Cir.1999) (citing *Rhodes v. Chicago Ins. Co.,* 719 F.2d 116, 120 (5th Cir. 1983)).

ranty, and for negligence.[2] *At issue* before the court is whether Mid–Continent has a duty to defend and indemnify Courtland in the underlying suit the Turmans have brought against it; the duty to defend being distinct from, and broader than, the duty to indemnify. *See St. Paul Fire & Marine Ins. Co. v. Green Tree Fin. Corp.—Texas,* 249 F.3d 389, 391 (5th Cir.2001).

### A. Analysis under the "Eight Corners" Rule

 The court applies Texas law in this diversity case. Interpretation of insurance contracts in Texas is governed by the same rules as interpretation of other contracts, and when terms are defined in an insurance policy, those definitions control. *See Harken Exploration Co. v. Sphere Drake Ins. P.L.C.,* 261 F.3d 466, 470 n. 3 (5th Cir.2001); *See also Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819, 823 (Tex.1997) (citations omitted). In determining an insurer's duty to defend, courts apply the "eight corners" rule, examining the factual allegations in the petition and the language of the insurance policy. *Malone v. Scottsdale Ins. Co.,* 147 F.Supp.2d 623, 627 (S.D.Tex.2001) (citing *Cowan,* 945 S.W.2d at 821–22). Courts compare the words of the insurance policy with the allegations of the plaintiff's com-

### 2. *THE FACTS*

. . . . . .

#### *FOUNDATION PROBLEMS AND RELATED DAMAGE TO THE HOME*

8. In approximately September of 2002, the Turmans noticed that an interior brick stair case was pulling away from the wall. Mr. Turman went under the house into the crawl space and found that the wood supporting the staircase had suffered great physical damage from wood rot and water penetration. After seeing this initial problem, he then made a general inspection of the entire crawl space and discovered that the majority of the wood used in the pier and beam construction had suffered significant physical damage, including wood rot and water damage. The physical damage was also found in the subflooring and in many of the studs that could be seen from the crawl space. The water had also penetrated the insulation in the floor and has moved throughout the entire first floor.

9. The water... fostered conditions which allowed mold to grow in and around the floors and walls of the Turmans' home.

10. It appears that the cause of the foundation problems,... could have been avoided if the design and construction of the improvements had been properly considered.... Courtland was hired to build a new home free from defects and in accordance with industry standards. There is no question that Courtland has failed to do so.

11. Additionally, Courtland had a duty as the general contractor to supervise the work performed by its subcontractors. There is no question that if Courtland had properly supervised the work done on its behalf by the subcontractors hired by Courtland, the court would have none of these problems.

#### *CAUSES OF ACTION*

. . . . .

##### *Negligence*

18. Courtland failed to act as reasonable contractor in the construction of the Turman's home. It failed to prepare the site correctly, failed to use the proper materials to construct the home and failed to provide for sufficient ventilation under the home.

19. Additionally, Courtland failed to act as a reasonable contractor with respect to the work performed by its subcontractors who assisted in the construction of the home. Courtland acted as the general contractor with respect to this project. The physical labor to construct the home, including the work to build the pier and beam foundation was done by Courtland and its subcontractors at Courtland's direction. Courtland failed to provide proper instructions to its subcontractors, failed to provide adequate materials to its subcontractors, failed to supervise the subcontractors adequately, and failed to inspect the work done by the subcontractors to ensure that it met with the plans and specifications provided and that the home was constructed in a good and workmanlike manner and to industry standards. (Doc. 6, Exh. A–3, ¶¶'s 6–19.)

plaint to determine whether *any* claim asserted in the pleading is potentially within the policy's coverage. *Federated Mutual Ins. Co. v. Grapevine Excavation,* 197 F.3d 720, 726 (5th Cir.1999). If some of the claims in the Turman's state court complaint when taken as true, state a cause of action within the policy terms, then Mid–Continent can be found to have breached its duty to defend. *See Hartford Cas. Co. v. Cruse,* 938 F.2d 601, 605 (5th Cir.1991).

■ When applying the "eight corners rule," the court gives the allegations in the petition a liberal interpretation, meaning that "in cases of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in insured's favor." *National Union Fire Ins. Co. of Pittsburgh, PA v. Merchants Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex.1997) (quoting *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.,* 387 S.W.2d 22 (Tex.1965)). In conducting this analysis, a court must focus on the factual allegations that show the origin of the damages rather than on the legal theories alleged. *Id.* (quoting *Merchants Fast Motor Lines v. National Union Fire Ins. Co.,* 919 S.W.2d 903, 905 (Tex.App.—Eastland 1996) *rev'd on other grounds,* 939 S.W.2d 139).

■ "The burden is on the insured to show that a claim against him is potentially within the scope of coverage under the policies; however, if the insurer relies on the policy's exclusions, it bears the burden of proving that one or more of those exclusions apply." *Id.* (citing *Guaranty Nat'l Ins. Co. v. Vic Mfg. Co.,* 143 F.3d 192, 193 (5th Cir.1998); *Canutillo Indep. Sch. Dist. v. National Union Fire Ins. Co.,* 99 F.3d 695, 701 (5th Cir.1996); *Sentry*

*Ins. v. R.J. Weber,* 2 F.3d 554, 556 (5th Cir.1993)). Even if the underlying plaintiff's allegations do not clearly show there is coverage, the insurer, as a general rule, will be obligated to defend if there is, potentially, an action alleged within the coverage of the policy. *Heyden,* 387 S.W.2d at 26.

■ The duty to indemnify, on the other hand, is triggered by the actual facts establishing liability in the underlying suit. *Cowan,* 945 S.W.2d at 821 (citing *Heyden,* 387 S.W.2d at 25); *See also Malone,* 147 F.Supp.2d at 629 (citing *Pilgrim Enter., Inc. v. Maryland Cas. Co.,* 24 S.W.3d 488, 490 (Tex.App.—Houston [1st Dist.] 2000, n.w.h.)). A court may determine that an insurer has no duty to indemnify "when the insurer has no duty to defend and the same reasons that negate the duty to defend negate any possibility [the] insurer will ever have a duty to indemnify." *Id.* at 630 (citing cases). Because the duty to defend is broader than the duty to indemnify, "logic and common sense dictate that if there is no duty to defend, then there must be no duty to indemnify." *Acceptance Ins. Co. v. Newport Classic Homes, Inc.,* No. Civ.A.3:99–CV–2010BC., 2001 WL 1478791, at *2 (N.D.Tex. Nov. 19, 2001) (citing *American States Ins. Co. v. Bailey,* 133 F.3d 363, 368 (5th Cir.1998)). Therefore, a party may secure a declaratory judgment on the insurer's duty to indemnify before the underlying tort suit proceeds to judgment. *Farmers Texas County Mutual Insurance Company v. Griffin,* 955 S.W.2d 81, 83 (Tex.1997). However, if a court determines that there is a duty to defend, a ruling on the duty to indemnify may be premature. *See Gehan Homes, Ltd. v. Employer's Mutual Casualty Co.,* 146 S.W.3d 833, 846 (Tex.App.— Dallas, 2004).

The policy[3] defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. 6 Exh. A–3, Section V, ¶ 13.) These are the terms with which the court is centrally concerned as both in its response to Courtland's motion, and in its own Motion for Summary Judgment, Mid–Continent asserts that it will not rely on any policy exclusions in making its arguments, but relies solely on the theory that Courtland's allegations state no "property damage" caused by an "occurrence" as a matter of law. (Doc. 8, pp. 5–6; Doc. 13, pp. 6–7.) As stated in *Mid–Century Ins. Co. v. Lindsey,*

3. **SECTION I—COVERAGES**
 **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
 1. **Insuring Agreement**
 a. "We will pay those sums the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. . . ."
 b. "This insurance applies to. . . "property damage" only if
 (1) The "bodily injury" or "property damages" is caused by an "occurrence" that takes place in the "coverage territory";
 (2) occurs during the policy period; and (3) . . ."
 2. **Exclusions**
 This insurance does not apply to:
 a. **Expected or Intended Injury**
 "Bodily injury" or "property damage" expected or intended from the standpoint of the Insured.
 j. **Damage to Property**
 "Property damage" to
 (5) That particular part of real property on which you or any contractors working directly or indirectly on your behalf are performing operations, if the "property damage" arise out of those operations. . . .; or
 (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it
 k. **Damage to Your Product**
 "Property damage" to "your product" arising out of it or any part of it.
 m. **Damage to Impaired Property or Property Not Physically Injured**
 "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
 (1) a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
 (2) a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
 n. **Recall of Products, Work or Impaired Property**
 Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
 (1) "your product";
 (2) "your work"; or
 (3) "your property";
 if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it. . . .
 **SECTION V DEFINITIONS**
 3. **"Bodily injury"** means bodily injury, sickness, or disease sustained by a person including death resulting from any of these at any time.
 VIII. **"Impaired property"** means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:
 a. it incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
 b. you have failed to fulfill the terms of a contract or agreement;
 if such property can be restored to use by:
 a. the repair, replacement, adjustment or removal or "your product" or your work; or
 b. your fulfilling the terms of the contract or agreement.
 17. **"Property damage"** means
 a. "[p]hysical injury to tangible property, including all resulting loss of that property." (Doc. Exh B., p. 15.)

Mid–Century's policy does not define "accident", but we have held that an injury is accidental if "from the viewpoint of the insured, [it is] not the natural and probable consequence of the action or occurrence which produced the injury; or in other words, if the injury could not reasonably be anticipated by insured, or would not ordinarily follow from the action or occurrence which caused the injury." *Republic Nat'l Life Ins. Co. v. Heyward,* 536 S.W.2d 549, 557 (Tex.1976). An injury caused by voluntary and intentional conduct is not an accident just because "the result or injury may have been unexpected, unforeseen and unintended." *Argonaut Southwest Ins. Co. v. Maupin,* 500 S.W.2d 633, 635 (Tex.1973). On the other hand, the mere fact that "an actor intended to engage in the conduct that gave rise to the injury" does not mean that the injury was not accidental. *Cowan,* 945 S.W.2d at 828. Rather, both the actor's intent and the reasonably foreseeable effect of his conduct bear on the determination of whether an occurrence is accidental. "An effect that 'cannot be reasonably anticipated from the use of [the means that produced it], an effect which the actor did not intend to produce and which he cannot be charged with the design of producing, is produced by accidental means.' " *Id.* at 827 (quoting *Heyward,* 536 S.W.2d at 555, in turn citing, *International Travelers' Ass'n v. Francis,* 119 Tex. 1, 23 S.W.2d 282, 284–85 (1930)) (second alteration in original) (emphasis omitted.)

997 S.W.2d 153, 155 (Tex.1999).

■ In *Harken Exploration Co. v. Sphere Drake Insurance PLC,* the Court of Appeals, distinguishing *Maupin* as involving "actions intentionally taken" and performed in such a manner as to be "an intentional tort," discussed several other cases in which an accident had been found when deliberate actions, performed negligently, had yielded unintended or unexpected consequences which would not have been effected had the actions been performed non-negligently. 261 F.3d 466, 472–73 (5th Cir.2001) (citing *Cowan,* 945 S.W.2d at 828); *Orkin,* 416 S.W.2d at 400; *Grapevine,* 197 F.3d at 726)). As emphasized by the Supreme Court of Texas, "[r]ather, both the actor's intent and the reasonably foreseeable effect of his conduct bear on the determination of whether an occurrence is accidental." *Lindsey,* 997 S.W.2d at 155.

■ The Turmans' alleged injury consists of "foundation problems, damage to the wooden support structure, wood rot, and resultant mold." (Doc. 6, Exh. A–3, ¶ 10.) The general factual allegations accuse Courtland of warranting that the work performed would be free from defects and that the work performed would conform to the construction agreement with the owners, of failing to properly consider the design and construction of the work, of failing to build a home free from defects and in accordance with industry standards, and of failing in its duty to properly supervise the work performed by its subcontractors. *Id.* The Turmans allege causes of action under the DTPA, for breach of warranty, and for negligence. As in *Grapevine,* the Turmans' complaint in the underlying litigation alleges Courtland's 'knowing' use of substandard materials as part of their DTPA claims, but because the Turmans also allege 'negligence,' the court looks to the latter allegations to determine whether an "accident" or "occurrence" is alleged. *See Grapevine,* 197 F.3d at 726. If at least one of the claims asserted falls within the scope of coverage, Mid–Continent's duty to defend is triggered. *CU Lloyd's of Texas v. Main Street Homes, Inc.,* 79 S.W.3d 687, 694 (Tex. Ct.App.—Austin, 2002, no pet.).

The court concludes that the Turmans' negligence allegations *do not* create a duty to defend on the part of Mid–Continent. The facts alleged in support of such allegations, and the vast array of applicable Texas state and federal cases construing the definitions of "accident" and "occurrence" with respect to damages found in the construction context support the court's decision. *See Mid Arc, Inc. v. Mid–Continent Casualty Co.*, No. A–03–CA–242–SS, 2004 WL 1125588, at *7 (W.D.Tex. Feb. 25, 2004); *Vesta Fire Ins. Corp. v. Nutmeg Ins. Co.*, Case No. A–00–CA–468–SS, 2003 U.S. Dist. LEXIS 25324, at *38 (W.D.Tex. Sept. 29, 2003); *Acceptance Ins. Co. v. Newport Classic Homes, Inc.*, No. Civ. A.3:99–CV–2010BC, 2001 WL 1478791, at *3–4 (N.D.Tex. Nov. 19, 2001); *Malone v. Scottsdale Ins. Co.*, 147 F.Supp.2d 623, 628 (S.D.Tex.2001). The court agrees that "the better reasoned authorities hold that claims such as the [Turmans] are making against the plaintiff are not claims of accidental damage to property," but rather are allegations that the contractor has failed to perform its work in a good and workmanlike manner. *Jim Johnson Homes Inc. v. Mid–Continent Casualty Co.*, 244 F.Supp.2d 706, 716 (N.D.Tex.2003).

As the court has found Mid–Continent not to have a duty to defend Courtland in the instant action, it also finds that Mid–Continent has no duty to indemnify Courtland. *See Newport Classic Homes*, 2001 WL 1478791, at *4.

### B. Analysis under Texas Insurance Code Article 21.55

Courtland argues that under Article 21.55[4] of the Texas Insurance Code, known as the "prompt payment of claims statute," it should be provided with an eighteen percent (18%) penalty and attorney's fees because Mid–Continent has wrongfully refused to assume or pay for Courtland's defense in its third-party liability lawsuit with the Turmans. Having reviewed the applicable law, the court agrees that Mid–Continent should *not* be responsible for a statutory penalty under Article 21.55 for such defense costs as well as reasonable attorney's fees. *See TIG Ins. Co. v. Dallas Basketball, Ltd.*, 129 S.W.3d 232, 239–242 (Tex.App.—Dallas 2004, no pet.)

Accordingly, it is hereby

ORDERED that Courtland Custom Homes, Inc's Motion for Partial Summary Judgment (Doc. 6) is DENIED; and, it is further

ORDERED that Cross–Motion of Defendant Mid–Continent Insurance Company ("Mid–Continent") for Final Summary Judgment (Doc. 13) is GRANTED.

---

4. **Tex. Ins.Code Article 21.55** provides in relevant part in its subsections

**Sec. 3(f)** Except as otherwise provided, if an insurer delays payment of a claim following its receipt of all items, statements, and forms reasonably requested and required, as provided under Section 2 of this article, for a period exceeding the period specified in other applicable statutes or, in the absence of any other specified period, for more than 60 days, the insurer shall pay damages and other items as provided for in Section 6 of this article.

**Sec. 6** In all cases where a claim is made pursuant to a policy of insurance and the insurer liable therefor is not in compliance with the requirements of this article, such insurer shall be liable to pay the holder of the policy, or the beneficiary making a claim under the policy, in addition to the amount of the claim, 18 percent per annum of the amount of such claim as damages, together with reasonable attorney fees. If suit is filed, such attorney fees shall be taxed as part of the costs in the case.